CITY OF NORWICH, DEPARTMENT OF PUBLIC
UTILITIES *v.* TOWN OF LEBANON
(12685)

CITY OF NORWICH *v.* TOWN OF LEBANON
(12762)

PETERS, C. J., SHEA, CALLAHAN, NOVACK and HAMMER, Js.

Argued May 7—decision released August 5, 1986

*Jackson T. King, Jr.,* with whom was *Mary E. Holzworth,* for the appellant (defendant in each case).

*George C. Hastings,* with whom was *Charles B. Spadoni,* for the appellee (plaintiff in each case).

SHEA, J. This combined appeal involves a continuing dispute between the plaintiff city of Norwich and the defendant town of Lebanon over the taxability of water supply land owned by Norwich and located in Lebanon. The factual and procedural history underlying these cases is not in dispute.

Since 1971 the plaintiff city of Norwich has owned approximately thirty-eight acres of watershed land in Lebanon. In 1973 Norwich constructed on part of this land a water treatment facility and other related improvements. The plant was used to furnish water to residents of Norwich and Lebanon, as well as to certain firms and residents of the neighboring towns of Montville, Bozrah, Franklin and Preston. Until July, 1979, Norwich provided water to Lebanon users at a marginally higher rate than that charged to its own residents. After that date, however, Norwich equalized its rates.

In connection with the preparation of its 1973 assessment, the board of assessors for the town of Lebanon forwarded a blank form to Norwich on which Norwich was requested to list property which it owned in Lebanon. On October 31, 1973, Donald E. Williams, an

employee of the Norwich Department of Public Utilities, estimated that the value of "buildings used for business, commercial, mercantile, and trading purposes, but not for manufacturing" was $2,000,000. Lebanon's board of assessors accepted the form and assessed the property at 70 percent of the estimated value placed on the property by Williams, after a 10 percent reduction for depreciation. General Statutes § 12-62a (b). The assessed valuation of $1,260,000 was then entered upon Lebanon's October 1, 1973 grand list.

In subsequent years, the defendant similarily assessed the subject property and imposed property taxes against Norwich accordingly. Norwich never appealed to the Lebanon board of tax review any of the assessments for the years 1973 through 1980. It did, however, in June, 1975, bring an action pursuant to General Statutes § 12-119 claiming that the 1973 and 1974 assessments were manifestly excessive and in violation of General Statutes §§ 12-81 (4) and 12-76. A demurrer to the first count involving the 1973 assessment was sustained in December, 1975, on the ground that the action was not instituted within one year after the assessment date of October 1, 1973, as required by General Statutes § 12-119. The remainder of the action challenging the 1974 assessment was dismissed in 1980 for failure to prosecute; Practice Book § 251; and Norwich did not appeal or move to open the judgment. Practice Book § 377; General Statutes § 52-212.

In October, 1980, Lebanon's tax collector issued an alias warrant to collect $956,336.65 in taxes, interest and lien fees he claimed to be due from Norwich on the 1974 through 1979 grand lists. Norwich, in November, 1980, instituted an action against Lebanon seeking an injunction to prohibit Lebanon from collecting taxes on the subject property for the years 1974 through 1980. The trial court, *Purtill, J.,* denied Nor-

wich's request for injunctive relief because Norwich had neglected to pursue the two statutory avenues available to challenge the tax, and, therefore, had failed to demonstrate that it had no adequate remedy at law. Norwich appealed from the judgment to this court, which affirmed the trial court's decision with respect to the years 1974 through 1979,[1] holding that Norwich's claim that its water supply property had been "wrongfully or excessively assessed could have been appealed in one of two ways: (1) to the board of tax review and from there, within two months, to the Superior Court pursuant to [General Statutes] §§ 12-111 and 12-118; or (2) by direct action to the court within one year from the date when the property was last evaluated for purposes of taxation pursuant to [General Statutes] § 12-119." *Norwich* v. *Lebanon,* 193 Conn. 342, 347–48, 477 A.2d 115 (1984). (*Norwich I*)

On February 18, 1976, Norwich paid Lebanon the 1973 tax bill, plus interest and certain costs. The payment was made under protest and Norwich specifically reserved its right to contest the validity of the tax assessment. Norwich filed with the Lebanon tax collector an application for repayment of the tax under General Statutes § 12-129. Lebanon refused to refund the tax.

The first appeal (Docket No. 12685) arises from this refusal of the Lebanon tax collector to refund the 1973 taxes paid by Norwich. On November 1, 1982, Norwich instituted an action seeking in the first count damages, equitable relief and a writ of mandamus ordering the

---

[1] In *Norwich I* this court concluded that the plaintiff's claim for relief from the assessment of October 1, 1980, was not barred by the one year limitation of General Statutes § 12-119. *Norwich* v. *Lebanon,* 193 Conn. 342, 349, 477 A.2d 115 (1984). On remand the parties stipulated that the determinative tax exemption issue would be determined by the outcome of the appeal in Docket No. 12685, where we upheld the judgment of the trial court that the water supply property was tax exempt pursuant to General Statutes § 12-81 (4).

tax collector of the town of Lebanon to return the amount paid for the 1973 assessment and, in a second count, an injunction prohibiting the collection of taxes based on the October, 1981 assessment as well as those for later years. After a trial to the court, *Tamborra, J.,* judgment was entered in favor of Norwich on both counts. The court concluded that the fair market value of the land in question should have been determined not as ordinary business property, but as if it were "improved farmland" under General Statutes § 12-76, and it ordered the defendant to refund the difference between the taxes paid and those that properly should have been assessed under the appropriate valuation standard. The court also concluded that because the property was used for a "public purpose" and because the residents of Lebanon were entitled to utilize the water supply at the same rate as residents of Norwich since July, 1979, General Statutes §§ 12-81 (4) and 12-76 provide tax exempt status. The court, therefore, entered an injunction prohibiting Lebanon from collecting any taxes on the disputed property based on the grand list of October 1, 1982, and also upon any future assessments so long as the statutory exemption requirements remain satisfied.

The second action (Docket No. 12762), which Norwich instituted on September 4, 1981, is a similar action, although not in the form of a mandamus, seeking a refund of the taxes for the years 1974 through 1979. Norwich paid these taxes under protest on August 31, 1984, following our decision in *Norwich I,* but also sought a refund of the amount paid, pursuant to § 12-129, a demand which the Lebanon tax collector refused. After a trial to the court, *Walsh, J.,* judgment was rendered in favor of Norwich. The court concurred with all of the findings of facts and legal conclusions of the court, *Tamborra, J.,* in the action involving the 1973 refund and ordered Lebanon to refund the differ-

ence between the taxes paid by the plaintiff for the tax years 1974 through 1979 and the amount which should have been paid under the "improved farmland" valuation standard.

The defendant Lebanon appeals from each judgment, claiming that the trial court erred (1) in failing to conclude, in accordance with its special defense in each action, that General Statutes § 12-118 and 12-119 are the exclusive judicial remedies for contesting the illegal assessment of property; and (2) in concluding that as of the October 1, 1982 assessment, the water supply property was exempt from taxation under General Statutes §§ 12-81 (4) and 12-76. We agree with the trial court in respect to the tax exempt status of the plaintiff's property for the 1982 tax assessment. Because Norwich has failed to pursue the statutory remedies available to it, however, we find error in the judgments ordering Lebanon to refund a substantial portion of the 1973 through 1979 taxes paid by Norwich.

I

The trial court, *Tamborra, J.*, concluded that all of the Norwich property assessed by Lebanon, the land, water treatment plant and related improvements, was owned by "a municipal corporation of this state and used for a public purpose." The property was thus exempt from taxation by virtue of General Statutes § 12-81 (4),[2] except that the water supply land was assessable pursuant to § 12-76[3] as "improved farm

---

[2] "[General Statutes] Sec. 12-81. EXEMPTIONS. The following-described property shall be exempt from taxation . . . (4) Municipal property. Except as otherwise provided by law, property belonging to, or held in trust for, a municipal corporation of this state and used for a public purpose, including real and personal property used for cemetery purposes. . . ."

[3] "[General Statutes] Sec. 12-76. ASSESSMENT OF WATER SUPPLY LAND. PAYMENTS IN LIEU OF TAXES BY CERTAIN MUNICIPAL CORPORATIONS RE WATER SUPPLY LAND IN ANOTHER MUNICIPALITY. (a) Land owned or taken by any municipal corporation, including any metropolitan district estab-

land" until Norwich in 1979 ceased to charge its Lebanon water customers at a higher rate than Norwich residents paid.

The first ground upon which Lebanon disputes this conclusion is that, because Norwich uses its water supply property in Lebanon to furnish water not only to Norwich customers but also to those in the towns of Bozrah, Montville, Preston and Franklin, the property is not being "used for a public purpose" and does not qualify for the exemption created by § 12-81 (4). Lebanon relies upon our decision in *Sachem's Head Property Owners' Assn.* v. *Guilford,* 112 Conn. 515, 519–20, 152 A. 877 (1931), where we held that water mains extending beyond the boundaries of a municipal corporation solely for the purpose of supplying inhabitants of another area outside its territorial limits were not tax exempt, because they were wholly devoted to the needs of another community and the corporation charter authorized the corporation to furnish water only to its residents. We also held, however, that mains extending beyond the boundaries of the municipality to the source of the water distributed to municipal residents, as well as, through the nonexempt mains, to the other community, were being used for a public purpose

lished under provisions of the general statutes or any special act, for the purpose of creating or furnishing a supply of water for its use shall be exempt from taxation when the inhabitants of the town in which such land is situated have the right to use, and use, such water supply upon the same terms as the inhabitants of such municipal corporation; otherwise such land shall be liable to taxation and shall be assessed in the town in which such land is situated to the corporation owning or controlling such water supply at what would be its fair market value were it improved farm land, notwithstanding the provisions of section 12-63 or any special act. Any such municipal corporation shall, with respect to any such land acquired on or after January 1, 1978, which is situated in a town other than that in which such municipal corporation is located, make annual payments to such town equal to the taxes which would otherwise be due if such land were assessed in accordance with section 12-63, exclusive of any taxes on improvements made on such land subsequent to acquisition by such corporation."

and thus tax exempt. Id., 519. None of the water supply property in Lebanon is used exclusively for the purpose of servicing customers outside Norwich, all of the water treated at the Lebanon plant being distributed alike to residents of Norwich and the surrounding towns. These circumstances are quite similar to those that induced us in *Sachem's Head* to find that the water mains extending from the municipal boundary to the water source and used for supplying both municipal residents and those of another community were tax exempt by virtue of their use for a public purpose. It should also be noted that the Norwich charter, unlike that in *Sachem's Head,* authorized the city to supply water to residents of the towns in the area that it serviced in addition to its own residents. We find no merit in Lebanon's claim that, because the water supply property is used to furnish water to customers residing outside Norwich as well as within the city, the property is not used for a public purpose.

An additional claim of Lebanon is that in *Norwich I* the trial court made a finding that the Lebanon property was not tax exempt and that Norwich is precluded by collateral estoppel from a redetermination of this issue. The memorandum of decision of the trial court, *Purtill, J.,* in that case plainly states that the paucity of evidence in respect to the nature of the water supply property and the applicability of §§ 12-76 and 12-81 (4) made it impossible to resolve the question of whether the property was tax exempt. On appeal, this court found error in the failure to resolve the tax exemption issue, and remanded the case for a determination thereof for the year 1980, the only tax year not subject to the one year limitation of § 12-119 as applicable to that action. Since it is apparent that the issue of exemption was never decided in *Norwich I,* Lebanon's claim that collateral estoppel bars Norwich from relitigating the question borders on the frivolous.

Our agreement with the trial court, *Tamborra, J.,* that the water supply property in Lebanon enjoyed tax exempt status since July, 1979, when Lebanon customers were charged for water at the same rates as Norwich customers as required by § 12-76 for the tax exemption, means that we find no error in the portion of the judgment enjoining Lebanon from collecting taxes on the Norwich property on the assessment list of October 1, 1982, and subsequent years.

## II

The court, *Tamborra, J.,* in Docket No. 12685 ordered that Lebanon refund the sum of $64,621.85 with interest to Norwich, representing the difference in taxes paid on February 18, 1976, under protest based upon the October 1, 1973 assessment as billed by Lebanon and the amount of such taxes as calculated on a proper assessment of the water supply land pursuant to § 12-76. In Docket No. 12762, the court, *Walsh, J.,* awarded Norwich $1,357,113.46 with interest, representing the portion of the taxes billed by Lebanon on the assessment list of October 1, 1974 through 1979 that had been paid under protest on August 31, 1984. We find error in both of these judgments.

In *Norwich I,* in which Norwich attempted to enjoin the collection of taxes based on the Lebanon grand lists of 1974 through 1979, this court held that the failure to follow the procedure established by § 12-119[4] for obtain-

---

[4] "[General Statutes] Sec. 12-119. REMEDY WHEN PROPERTY WRONGFULLY ASSESSED. When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which

ing relief from an illegal or manifestly excessive assessment barred the grant of any of the relief requested. We had previously held that, "[a]s the statute was clearly intended to take the place of the remedy in equity based on an overvaluation of the property and as all the relief can be obtained under it which could be afforded by equity, it precludes a resort to equity generally in such a case as the one before us." *Cohn* v. *Hartford,* 130 Conn. 699, 704, 37 A.2d 237 (1944). We held in *Norwich I* that § 12-119 effectively established a statute of limitations of one year from the valuation date within which an illegal or grossly excessive assessment can be challenged.

After our remand of *Norwich I* to the trial court for further proceedings, Norwich proceeded on August 31, 1984, to pay the taxes due for the years 1974 through 1979 under protest in order to avoid a threatened execution on its property by way of an alias tax warrant. The letter enclosing this payment to the Lebanon tax collector for taxes based on the disputed assessments also demanded that the disputed sum, $1,357,113.46 be refunded immediately pursuant to General Statutes § 12-129.[5] When Lebanon refused this demand, Nor-

such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the superior court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

[5] "[General Statutes] Sec. 12-129. REFUND OF EXCESS PAYMENTS. Any person, firm or corporation who pays any property tax in excess of the principal of such tax as entered in the rate book of the tax collector and covered by his warrant therein, or in excess of the legal interest, penalty or fees pertaining to such tax, or who pays a tax from which the payor is by statute exempt and entitled to an abatement, or who, by reason of a clerical

wich commenced an action on September 4, 1984, almost ten years from the first assessment involved, seeking a refund of the taxes it had paid under protest.

This court declared in *Norwich I* that relief from an illegal or excessive assessment is obtainable only (1) by appeal to the board of tax review and then by a further appeal within two months, to the Superior Court pursuant to §§ 12-111 and 12-118 or (2) by an action in court pursuant to § 12-119 within one year from the last valuation date. Norwich maintains, nevertheless, that it may avoid these temporal limitations by paying under protest, at any time it chooses, the taxes computed upon the illegal or excessive assessment and then, after a request for refund under § 12-129 has been denied, commence a suit to recover the amount paid.

error on the part of the assessors, tax collector or any other town officer, pays a tax in excess of that which should have been assessed against his property, or who is entitled to a refund because of the issuance of a certificate of correction, may make application in writing to the collector of taxes for the refund of such amount. Such application shall be made within six years from the date of payment and shall contain a recital of the facts and shall state the amount of the refund requested. The collector shall, after examination of such application, refer the same, with his recommendations thereon, to the board of selectmen in a town or to the corresponding authority in any other municipality, and shall certify to the amount of refund, if any, to which the applicant is entitled. Upon receipt of such application and certification, the selectmen or such other authority shall draw an order upon the treasurer in favor of such applicant for the amount of refund so certified. Any action taken by such selectmen or such other authority shall be a matter of record, and the tax collector shall be notified in writing of such action. Upon receipt of notice of such action, the collector shall make in his rate book a notation which will date, describe and identify each such transaction. Each tax collector shall, at the end of each fiscal year, prepare a statement showing the amount of each such refund, to whom made and the reason therefor. Such statement shall be published in the annual report of the municipality or filed in the town clerk's office within sixty days of the end of the fiscal year. Nothing in this section shall be construed to allow a refund based upon an error of judgment by the assessors, nor a refund as to which the procedure has, prior to October 1, 1943, been determined by statute."

See *National CSS, Inc.* v. *Stamford,* 195 Conn. 587, 597 n.10, 489 A.2d 1034 (1985).

Prior to the enactment of § 12-119 in 1921, an action was permitted to obtain a refund of taxes paid under protest in the face of an attempt to collect them by the taxing authority. *Underwood Typewriter Co.* v. *Chamberlain,* 92 Conn. 199, 204–205, 102 A. 600 (1917); *Shaw* v. *Hartford,* 56 Conn. 351, 15 A. 742 (1888); *Phelps* v. *Thurston,* 47 Conn. 477, 486 (1880); *First Ecclesiastical Society of Hartford* v. *Hartford,* 38 Conn. 274, 290 (1871); *Hubbard* v. *Brainard,* 35 Conn. 563, 576 (1869). The action of indebitatus assumpsit for money had and received, is the appropriate remedy for recovery of money collected under an illegal assessment. *Bailey* v. *Goshen,* 32 Conn. 546, 548 (1865); *Adam* v. *Litchfield,* 10 Conn. 127, 131 (1834). "Originally an action for the recovery of debt, favored because more convenient and flexible than the common law action of debt, it has been gradually expanded as a medium for recovery upon every form of quasi-contractual obligation in which the duty to pay money is imposed by law, independently of contract, express or implied in fact." *Stone* v. *White,* 301 U.S. 532, 534, 57 S. Ct. 851, 81 L. Ed. 1265, reh. denied, 302 U.S. 777, 58 S. Ct. 260, 82 L. Ed. 601 (1937); J. B. Ames, "The History of Assumpsit," 2 Harv. L. Rev. 53, 68. Although such an action to recover illegal taxes paid under duress is one at law, it is governed by equitable principles. Id.; see *Bailey* v. *Goshen,* supra, 549 (characterizing the action of assumpsit to recover illegal taxes as "an equitable one"). "It lies whenever no other remedy is given . . . ." 72 Am. Jur. 2d, State and Local Taxation § 1079.

We have frequently held that where a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure. *LaCroix* v. *Board of Education,* 199 Conn. 70, 78, 505 A.2d 1233

(1986); *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 685, 485 A.2d 1272 (1984); *Sullivan* v. *State,* 189 Conn. 550, 559, 457 A.2d 304 (1983); *Carpenter* v. *Planning & Zoning Commission,* 176 Conn. 581, 598, 409 A.2d 1029 (1979). Courts of other jurisdictions have applied this principle to bar suits in assumpsit where there existed adequate statutory remedies which the taxpayer had failed to employ. *Hoffman* v. *Colorado State Board of Assessment,* 683 P.2d 783, 785 (Colo. 1984); *Stout Industries, Inc.* v. *Leachman,* 699 S.W.2d 129, 131–32 (Mo. App. 1985); *Jaroff* v. *Board of Assessment Review,* 89 App. Div. 2d 617, 452 N.Y.S.2d 666 (1982); *Sullivan* v. *Oklahoma Tax Commission,* 283 P.2d 521, 523–24 (Okla. 1954); *Columbia Developers, Inc.* v. *Elliott,* 269 S.C. 486, 490, 238 S.E.2d 169 (1977). "Where the General Assembly has established complete, adequate and speedy statutory remedies for alleged tax irregularities, a taxpayer must exhaust them." *Hoffman* v. *Colorado State Board of Assessment,* supra, 785. Where there is no statutory remedy or it is inapplicable under the circumstances, the action of assumpsit continues to survive for the purpose of obtaining a refund of illegal taxes paid under duress. *Glendale Heights Ownership Assn.* v. *School District,* 393 Pa. 485, 491–92, 143 A.2d 386 (1958). With respect to taxes illegally imposed on exempt property as compared to taxes resulting from overvaluation, some courts have made an exception to the requirement of exhaustion of statutory remedies, but others have rejected this distinction.[6] *Yttrup Homes* v. *County of Sacramento,* 73 Cal. App. 3d 279, 282 n.1, 140 Cal. Rptr. 680 (1977); cf. *Reynolds Fasteners, Inc.* v. *Wright,* 197 So. 2d 295 (Fla. 1967); see annot., 25 A.L.R.4th 186, 225–29.

---

[6] General Statutes § 12-119 is applicable expressly as a remedy for both "property not taxable" and for "manifestly excessive" valuations. The circumstance that the statute is equally available to correct both kinds of assessment errors militates against our following those precedents excepting tax exempt property from the exhaustion requirement.

Norwich points out that § 12-119 does not purport to be an exclusive remedy to correct illegal or excessive assessments, since the statute expressly declares the procedure it establishes to be "in addition to the other remedies provided by law." It is claimed that this reference to "other remedies" pertains not only to the alternative procedure under §§ 12-111 and 12-118 of an appeal to the board of tax review and, if necessary, from the board to the court, but also to the established common law remedy of indebitatus assumpsit. In *Connecticut Light & Power Co.* v. *Oxford,* 101 Conn. 383, 391–92, 126 A. 1 (1924), this court did declare that the enactment of § 12-119 "merely added one more" to the "recognized remedies" of an appeal to the board of tax review and of assumpsit for "money illegally received and retained." The court regarded the statute as "properly speaking, merely declaratory of existing legal and equitable rights; for can it be doubted that relief outside of that obtainable by appeal, would have been afforded as respects the two categories mentioned in the recent statute, that is, the absolute nontaxability of the property in the municipality where situated, and a manifest and flagrant disregard of statutory provisions." Id.

In *Cohn* v. *Hartford,* supra, 702, however, we recognized that §§ 12-118 and 12-119 "limit to a short period the time within which the property owner can seek relief under them, and the purpose of this is undoubtedly to prevent delays in the ultimate determination of the amounts a municipality can collect as taxes." It is apparent that this legislative purpose would be thwarted if an action for refund of taxes paid upon a disputed assessment could be brought far beyond the time limits for contesting an assessment established by these statutes. We, therefore, reject the plaintiff's contention that the indebitatus assumpsit remedy becomes available whenever a taxpayer of sufficient resources

chooses to pay the taxes related thereto, even long after expiration of the period during which statutory remedies provided for relief from an erroneous assessment were available. In *National CSS, Inc.* v. *Stamford,* 195 Conn. 587, 597–98, 489 A.2d 1034 (1985), we held that the failure of a taxpayer to apply for a certificate of correction pursuant to General Statutes § 12-57 to correct an erroneous assessment of personal property within the period of one year allowed by the statute barred resort to the similar common law quasi-contractual action of unjust enrichment to recover the taxes paid upon the illegal assessment. "Public policy requires . . . that this court not permit taxes collected or paid to be the subject of perpetual litigation, at any time, to suit the convenience of the taxpayer." Id., 597. Similarly in *Hartford* v. *Faith Center, Inc.,* 196 Conn. 487, 490–92, 493 A.2d 883 (1985), the failure of the taxpayer to utilize the procedures for contesting an assessment established by §§ 12-118 and 12-119 was deemed to preclude an attempt to raise the illegality of the assessment as a special defense in an action to collect the taxes imposed as a result. "[W]e see no reason to allow a taxpayer who has failed to utilize the available statutory remedies to assert, in an action to collect a tax under General Statutes § 12-161, that the tax has not been 'properly assessed.'" Id., 491.

The contention of the plaintiff Norwich that it can circumvent the time limitations of §§ 12-118 and 12-119 by resorting to the ancient writ of indebitatus assumpsit is incompatible with the conception that such an action is governed by equitable principles. *Stone* v. *White,* supra, 534–35; *Bailey* v. *Goshen,* supra, 549; 72 Am. Jur. 2d, State and Local Taxation § 1079. Norwich's disregard of the statutory remedies for correcting an erroneous assessment cannot be reconciled with the familiar principle that resort to equity may be had only where legal relief is unavailable or inadequate. *Laurel*

*Park, Inc.* v. *Pac,* supra, 691. The equitable doctrine of laches is similarly implicated by the inexcusable delay that transpired before Norwich commenced this action to enforce its claim and the prejudice that upholding such a tardy assessment challenge would cause to Lebanon, whose yearly budgets and tax rates have been premised upon the validity of its grand list, including the assessment of the water supply property. *New York Annual Conference* v. *Fisher,* 182 Conn. 272, 292, 438 A.2d 62 (1980). Although § 12-119 may have been enacted "in addition to the other remedies provided by law" and thus did not wholly remove indebitatus assumpsit as a vehicle for obtaining a tax refund; *Connecticut Light & Power Co.* v. *Oxford,* supra, 391–92; the statute did not exempt such an action from application of the equitable principles that have historically controlled its use. *Stone* v. *White,* supra. Where the evident purpose of the statute, "to prevent delays in the ultimate determination of the amounts a municipality can collect as taxes"; *Cohn* v. *Hartford,* supra, 702; will be defeated by such an extreme disregard of the statutory time limits for relief as appears in this case, we conclude that the legislative purpose of establishing a mechanism for prompt resolution of assessment disputes must prevail so that town taxes can be computed upon a reliable grand list.

Accordingly, we find error in the part of the judgment of the court, *Tamborra, J.,* ordering a refund to Norwich with interest of the taxes paid under protest on the Lebanon assessment list of October 1, 1973. Similarly, we find error in the judgment of the court, *Walsh, J.,* ordering that Norwich recover from Lebanon the taxes paid on the lists of October 1, 1974 through 1979.

In Docket No. 12685 there is error in the judgment on the first count of the complaint awarding a refund to Norwich of the taxes paid on the Lebanon assess-

ment list of October 1, 1973, the judgment is set aside, and the case is remanded with direction to render judgment for the defendant Lebanon on the first count. There is no error in the judgment on the second count enjoining Lebanon from collecting taxes on the water supply property based upon the lists of October 1, 1982 and subsequent years.

In Docket No. 12762 there is error, the judgment is set aside, and the case is remanded with direction to render judgment for the defendant Lebanon.

In this opinion the other justices concurred.