[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On September 11, 1981, DMF Corp., acting by and through its president, Dennis E. Arrouet, conveyed three certain tracts, pieces or parcels of land described as Parcel B3 containing fourteen point zero (14.0) acres more or less, Parcel B 1, containing eight point nine (8.9) acres more or less, and Parcel C containing eight point two (8.2) acres more or less all as shown and designated on a certain map entitled "Map of Property Prepared for Marcel D. Arrouet and Yvonne H. Arrouet, Redding, Conn. scale 1" = 100', March 10, 1970" certified substantially correct by Roland H. Garner, Conn. Reg. No. 5179, which map was approved by the Redding Planning Commission over the signature of James F. Sumner, Chairman, on March 23, 1971, which map is on file in the office of the Town Clerk of the Town of Redding as Map No. thirteen seventy-three CT Page 8332 (1373), and to which map reference may be had for a more particular description of the premises, to HALSEY-ALLEN PROPERTIES, a general partnership with an office on Glen Hill Lane in Redding, Connecticut, by warranty deed,[1] which deed is recorded in Volume 111, page 435 of the Redding Land Records. On the same day, Dennis E. Arrouet, Trustee, Francois V. Arrouet, Trustee, and Marcel J. Arrouet, Trustee, conveyed a certain tract, piece of parcel of land together with the buildings and improvements thereon standing as shown and designated as Parcel B2 containing twenty-one point zero (21.0) acres more or less on a certain map entitled, "Map of Property Prepared for Marcel D. Arrouet and Yvonne H. Arrouet Redding, Conn., scale 1" = 100' March 10, 1970" certified substantially correct by Roland H. Garner Land Surveyor, Wilton, Connecticut, which map is on file in the office of the Redding Town Clerk as Map No. thirteen seventy-three (1373) and to which map reference may be had for a more particular description of the premises, to Lawrence S. Levine and Linda Levine by warranty deed,[2] which deed is recorded in Volume 111, page 437 of the Redding Land Records.
These conveyances aggregate a total of fifty-two point one (52.1) acres more or less. Parcel thirty-four (34) is contiguous with the other three parcels. However, none of those other three parcels enjoy any contiguity with each other. HALSEY-ALLEN PROPERTIES, while described as a general partnership, fails as a recognized legal entity in this state and it is little more than a legal fiction for the true owners, Lawrence and Linda Levine, who claim to have and have satisfied the court that they have indeed unity of ownership in all four parcels.
The Town of Redding, through its Planning Commission, adopted an open space plan[3] under the aegis of Sec. 12-107(e) of the General Statutes and has designated certain qualified residentially zoned land in that town as open space land for tax purposes. All contiguous parcels of land held in single unit ownership, meeting certain requirements, may be classified as open space land subject to certain exclusions. The first of these is land zoned or used for commercial, business, industrial or designated enterprise zones; the second is land legally subdivided into residential building lots of four (4) acres or less; the third is the first four (4) acres of any parcel upon which the applicant has not built; and the fourth occurs if the applicant has built upon the parcel. In that event, an exclusion applies to the first four (4) acres for each residential unit upon the parcel with a maximum of four hundred (400) feet frontage for each four (4) acres with certain additional exceptions. The four (4) acre areas are subject to taxation at fair market value vice CT Page 8333 open space land. The prior owners of the four parcels, the Arrouets' as trustees and DMF Corp. of which Dennis Arrouet was the president, had classified the four parcels as four separate lots for open space purposes.
On or about October 18, 1982, the plaintiff, Lawrence, met with the assessor, the defendant, Werfelman, at his office and inquired about classifying his property as open spaces in accordance with Sec. 12-107(e) to obtain an assessment based upon the open space valuation rather than the fair market valuation of the property. Mr. Levine claimed ignorance as to much of the taxation mystique of Connecticut as well as the nuances of its real estate laws. His announced purpose in obtaining title in the form and style utilized was to preclude the operation or the application of the doctrine of merger which he believed would destroy the prior approval of the land as a legitimate subdivision in the Town of Redding. At Werfelman's suggestion, Levine decided to use the same manner of application as his predecessors in title had. Werfelman then directed his assistant to prepare the application forms which Levine executed and filed for each parcel. The four (4) were then classified separately as open space.
Parcel thirty-four (34) is a developed residential lot containing a main residence and three additional accessory structures. The Arrouet application had recognized the main residence and two of the three accessory structures as residential units, excluding four acres from open space for each of the three residential units so designated. Levine did not challenge that determination. For each of the three undeveloped lots, Werfelman excluded the first four acres from open space. This process excluded twenty-four (24) acres from the open space classification and valued those twenty-four (24) acres at fair market value, i.e., four (4) acres each for the three residential units on parcel thirty-four (34) of the developed lot and the first four (4) acres on each of the three (3) undeveloped lots. The remaining twenty-eight point one (28.1) acres were assessed at the current use value of open space as provided in Sec.12-63 of the General Statutes. Assessments predicated upon these valuations were applied to the grand lists of 1983, 1984, tax year July 1, 1984 to June 30, 1989.
In September of 1988, the Levines submitted a new application for open space together with an affidavit asserting that they were the owners of the parcels conveyed to HALSEY-ALLEN PROPERTIES. This new application attempted to have the entire fifty-two point one (52.1) acre tract treated as one contiguous lot for open space classification. CT Page 8334 Werfelman acceded to that request, as set forth in that application, and reclassified the four parcels as a single lot for open space purposes for the grand list of 1988. Again, in 1988, at the request of the Levines, Werfelman inspected the accessory structures on Parcel thirty-four (34) and eliminated one of the structures previously classified as a residential unit. For the grand list of 1988, the entire Levine tract was treated as a contiguous parcel of land held in a single unit ownership and as a developed lot. A total of eight (8) acres was then excluded from open space classification leaving four (4) acres for each of the two remaining residential units.
The Levines have paid all of their tax bills for the tax years July 1, 1984 to June 30, 1989 and have demanded a tax reduction equivalent to those taxes attributed to the assessment at a fair market value of sixteen (16) acres excluded from open space valuation on the grand lists of 1983 through 1987. For those lists of 1983 through 1987, the Levines did not have recourse to the Redding Board of Tax Review. One tax payment, however, which was due and payable on January 1, 1989 was in fact paid under protest. The Town of Redding has refused to grant a tax reduction and this action was instituted to recover what they claim to be their excessive tax payments. The aggregate tax payment for the five grand lists attributable to the sixteen (16) acres excluded from the open space prior to 1988 is twenty thousand four hundred ninety-two dollars and eighty-two ($20,492.82) cents.[4]
The plaintiffs have filed this action in five counts. The first two allege an assessor's error and purportedly are Board of Tax Review of the Town of Redding. It is also significant to note that the taxes allegedly paid under the cloud of an assessment error were only once paid "under protest" and hence with that sole exception were never protected by that reservation.
The defendant at oral argument disputed the plaintiffs' causes of action, specifically the contractual claim, and asserted vehemently that this action is simply a tax appeal regardless of what the plaintiffs choose to call it. It is significant to note that any kind of taxation appellate procedure was unknown to the common law. Those refusing to pay, unable to pay or protesting the payment of taxes, found little solace in the sovereign's response: confiscation, pain, mutilation and not unfrequently death. There can be little question that the legislature has rushed into that common law void and clearly and unequivocally provided specific, limited and exclusive recourse. CT Page 8335
Each of the parties, if acknowledging it at all, has, at best, given short shrift to the doctrine of exhaustion of remedies. Section 12-60 provides very clearly that anyone aggrieved by the doings of the assessor may take an appeal to the Board of Tax Review. Thereafter, the intervention of this court may be sought. It is also significant to note, as previously mentioned, that there was only one reservation of right payment recognized or claimed by the plaintiffs by paying any payments that they made "under protest." The plaintiffs by ignoring the Board of Tax Review and by not paying "under protest" clearly manifest a fatal failure to exhaust administrative remedies and the saving graces set forth in the statutes upon which they would rely are not available to them.
"Connecticut law provides only two methods by which a taxpayer may contest his property taxes, that is, Secs.12-118 and 12-119 of the General Statutes. Woodbury v. Pepe,6 Conn. App. 330, 332; see Norwich v. Lebanon, 200 Conn. 697,707.
"[W]here a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." LaCroix v. Board of Education, 199 Conn. 70, 78; Laurel Park, Inc. v. Pac, 194 Conn. 677, 685; Norwich v. Lebanon, supra, 708-709. The plaintiffs' contract theory necessarily falls before those statutes and the cases which speak to them.
In addressing the issue of mistake, the defendant contends that Sec. 12-60 is inapplicable to the issues presented in this particular litigation as this issue is one of substance and not merely one of clerical mistake or omission. It concludes that even were the actions of the assessor a mistake from the plaintiffs' point of view, it was not clerical. It was an error of substance and therefore the term "mistake" in this instance avails the plaintiffs of nothing. National CSS, Inc. v. Stamford, 195 Conn. 587, 596. The town also attacks the plaintiffs' argument that our legislature, having created a specific statutory mechanism for property tax appeals, all of which rely upon a very brief statute of limitations, nevertheless allowed an alternative appeal mechanism by way of Sec. 12-60 wherein an appeal could be taken at any time simply by characterizing an incorrect assessment as a "clerical error." This, the court agrees, is not logically nor legally sound.
CT Page 8336 In order to obtain relief under the statute, the plaintiffs in this instance are required to prove that the assessment was MANIFESTLY EXCESSIVE (emphasis supplied) and could not have been arrived at except by disregard of the provision of the statutes for determining the valuation of property. Interestingly enough, any application such as this to the Superior Court must be filed within one year from the date on which the property was last evaluated. This statute of limitations would appear to constrain the court to find only that the assessment on a tax list of 1987 would be subject to such an action, assuming that the other statutory requisites had been met.
To prevail under Sec. 12-119, the plaintiffs are obligated to prove, and the court certainly must find, that the action of the assessor was manifestly excessive and could not have been arrived at except by disregard of the provisions of the statutes for determining the valuation of the property even without an in-depth analysis of the case law on this subject which is hardly necessary in this memorandum because the simple answer is that the plaintiffs have not by credible evidence met the burden of proving that the assessments were in fact manifestly excessive or in disregard of the statutory law made and provided.
Judgment may enter for the defendants on the plaintiffs' complaint.
Moraghan, J.