[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 RE DEFENDANT'S MOTION TO DISMISS
This is a dispute between two rival ambulance companies. The plaintiff in this action for declaratory and injunctive relief, American Medical Response of Connecticut, Inc. ("AMR"), alleges that the defendant, EFK of Connecticut, Inc. ("EFK"), has violated a variety of state regulations. EFK has filed the motion to dismiss now before the court contending that the court has no subject matter jurisdiction to hear the dispute. For the reasons set forth below, the motion must be granted.
AMR commenced this action by service of process on May 25, 2001. AMR is the sole plaintiff, and EFK is the sole defendant. AMR's Complaint for Declaratory Judgment is pleaded in one count. That count (described in detail below) alleges that EFK has violated several regulations of the Department of Public Health ("DPH"). AMR requests a declaratory judgment that EFK has committed the claimed violations and an injunction prohibiting it from responding to requests for emergency medical services in North Haven, New Haven, and Milford.
On June 4, 2001, EFK filed the Motion to Dismiss now before the court. The court subsequently invited the Attorney General to provide the court with his opinion concerning the jurisdictional questions raised in the motion. The motion was heard on June 7, 2001. The Attorney General entered his appearance for DPH at the hearing, and at his request DPH was joined as a party. The case was submitted by posthearing briefs on June 26, 2001.
AMR's allegations arise against a highly articulated backdrop of statutory and regulatory provisions. The Commissioner of DPH is statutorily authorized to "[e]stablish primary service areas and assign in writing a primary service area responder for each primary service area." Conn. Gen. Stat. § 19a-177 (11). "Primary service area" and CT Page 8720 "primary service area responder" are terms of art. A "primary service area" is "a specific geographic area to which one designated emergency medical services provider is assigned for each category of emergency medical response services." Conn. Gen. Stat. § 19a-175 (23). A "primary service area responder" is "an emergency medical services provider who is designated to respond to a victim of sudden illness or injury in a primary service area." Conn. Gen. Stat. § 19a-175 (24). A "provider" is "any person, corporation or organization, whether profit or nonprofit, whose primary purpose is to deliver medical care or services, including such related medical care services as ambulance transportation." Conn. Gen. Stat. § 19a-175 (13).
No person is permitted to "operate any ambulance service . . . without a without either a license or a certificate issued by the commissioner." Conn. Gen. Stat. § 19a-180 (a). "In considering requests for approval of permits for new or expanded emergency medical services in any region," the commissioner is obliged to consult with the Office of Emergency Medical Services ("OEMS"), an office established within DPH, and to hold a public hearing. Id. "Any person or emergency medical service organization which does not maintain standards or violates regulations . . . applicable to such person or organization may have such person's or organizations license or certification suspended or revoked or may be subject to any other disciplinary action specified in § 19a-17" following notice and hearing. Conn. Gen. Stat. § 19a-180 (b). Conn. Gen. Stat. § 19a-17 gives DPH a wide array of disciplinary powers, including the ability to suspend or revoke licenses and to impose probationary status with appropriate conditions. The commissioner is statutorily empowered to adopt regulations "concerning the methods and conditions for licensure and certification of the operations, facilities and equipment enumerated in § 19a-177 and regulations regarding complaint procedures for the public and any emergency medical service organization." Conn. Gen. Stat. § 19a-179. More generally, the commissioner is statutorily empowered to "adopt and enforce regulations, in accordance with chapter 54, as are necessary to carry out the purposes of the department as established by statute." Conn. Gen. Stat. §19a-2a(2).
The DPH regulations provide that "OEMS shall assign, in writing, a primary service area responder for each primary service area." Conn. Agencies Regs. § 19a-179-4 (a). Highly detailed regulations govern the categorization of emergency response services and the staffing requirements for those services, the availability of response services, the minimum personnel qualifications for such services and the minimum vehicle standards for such services. Conn. Agencies Regs. §§ 19a-179-10, 11, 16a 18. In addition, OEMS can approve "sponsor hospitals," which are hospitals that have "agreed to maintain staff for the provision of CT Page 8721 medical control to emergency medical service providers." Conn. Agencies Regs. § 19a-179-1(cc). "Any proceedings conducted in accordance with these regulations shall be considered a contested case under the department of health services rules or practice and procedure, Secs.19-2a-1 through 19-2a-41, Regulations of Connecticut State Agencies." Conn. Agencies Regs. § 19a-179-20. In addition, "[a]ny person may file a petition whenever that person has cause to believe that any health professional or institution licensed by the department, or other entity under the jurisdiction of the department, has been engaged or is engaging in any practice that violates a statute or regulation." Conn. Agencies Regs. § 19a-9-9.
The allegations of AMR's complaint must now be described in detail. AMR alleges that it is has been designated as the Primary Service Area Responder ("PSAR") by OEMS for the Cities of New Haven, North Haven, and Milford. It has entered into agreements with the Hospital of St. Raphael, Yale-New Haven Hospital, and The Milford Hospital, all of which have been approved as sponsor hospitals. AMR further alleges that EFK, which does business as Nelson Ambulance Service Company, has no PSAR designation within the State of Connecticut and no agreement with any sponsor hospital "in the Greater New Haven Area." EFK does, however, operate under an agreement with Bridgeport Hospital through the Joint Hospital Planning Council, which provides medical control "for the Southwestern Fairfield County area."
The complaint specifically alleges that EFK "has engaged in a pattern of conduct, whereby it has responded to requests for emergency medical services that have been dispatched to AMR as the designated PSA [primary service area] holder." This practice is assertedly referred to as "jumping the call" and has allegedly occurred on five instances from February 28, 2000 to May 14, 2001. The complaint incorporates by reference a series of documents concerning these instances. One such document establishes that the asserted incident of February 28, 2000 resulted in a complaint made by AMR to DPH and a written response by DPH on March 22, 2000 that it is "responsible" for investigating such complaints and has assigned an investigator to investigate the allegation in question. The complaint does not state the outcome of the investigation.
The complaint claims that EFK's conduct "violates the basic requirements of the Regulations of Connecticut State Agencies." The conduct complained of assertedly endangers the lives of emergency medical service providers and "the public, at large." Moreover, EFK allegedly violates the requirement of Conn. Agencies Regs. § 19a-179-18 (j) that ambulances display appropriate exterior identification. Finally, the complaint asserts that EFK has applied to DPH "for additional ambulance CT Page 8722 licenses" without disclosing the incidents complained of.
EFK's motion to dismiss contends that the court lacks subject matter jurisdiction to hear and adjudicate AMR's claims because AMR has failed to exhaust its administrative remedies. The Connecticut Supreme Court has recently summarized the law controlling this issue:
 "It is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." (Internal quotation marks omitted.) Housing Authority v. Papandrea, 222 Conn. 414, 420, 610 A.2d 637 (1992); Cannata v. Dept. of Environmental Protection, 215 Conn. 616, 622, 577 A.2d 1017 (1990); Connecticut Life Health Ins. Guaranty Assn. v. Jackson, 173 Conn. 352, 358-59, 377 A.2d 1099 (1977). "We have frequently held that where a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." Norwich v. Lebanon, 200 Conn. 697, 708, 513 A.2d 77 (1986); Cannata v. Dept. of Environmental Protection, supra, 215 Conn. 623. "[B]ecause the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter whether that doctrine requires dismissal of the plaintiff['s] claim." (Internal quotation marks omitted.) Housing Authority v. Papandrea, supra, 420; Concerned Citizens of Sterling v. Sterling, 204 Conn. 551, 556, 529 A.2d 666 (1987); see also Concerned Citizens of Sterling v. Sterling, supra, 557 ("whenever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to [its] previous rulings.")
 "The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions." (Internal quotation marks omitted.) Housing Authority v. Papandrea, supra, 222 Conn. 420; Concerned Citizens of Sterling v. Sterling, supra, 204 Conn. 557. "The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency CT Page 8723 . . . in advance of possible judicial review" (Internal quotation marks omitted.) Housing Authority v. Papandrea, supra, 420; Concerned Citizens of Sterling v. Sterling, supra, 556. In addition, the administrative agency may be able to resolve the issues, making judicial review unnecessary. As the United States Supreme Court has stated, "[a] complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. McKart v. United States, 395 U.S. 185, 195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969)." (Internal quotation marks omitted.) Housing Authority v. Papandrea, supra, 420-21; Pet v. Dept. of Health Services, 207 Conn. 346, 351-52, 542 A.2d 672 (1988).
 "The [exhaustion] doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to numerous exceptions." McKart v. United States, supra, 395 U.S. 193; Johnson v. Dept. of Public Health, 48 Conn. App. 102, 112, 710 A.2d 176
(1998). "[W]e have recognized such exceptions only infrequently and only for narrowly defined purposes"; (internal quotation marks omitted) Polymer Resources, Ltd. v. Keeney, 227 Conn. 545, 561, 630 A.2d 1304
(1993); Pet v. Dept. of Health Services, supra, 207 Conn. 353; such as when recourse to the administrative remedy would be futile or inadequate. In light of the policy behind the exhaustion doctrine, these exceptions are narrowly construed. See, e.g., Simko v. Ervin, 234 Conn. 498, 507, 661 A.2d 1018 (1995) (plaintiffs' mere suspicion of bias on part of defendant, without more, not sufficient to excuse them, on ground of futility, from exhaustion requirement); OG Industries, Inc. v. Planning Zoning Commission, 232 Conn. 419, 429, 655 A.2d 1121 (1995) (actual bias, rather than mere potential bias, of administrative body renders resort to administrative remedies futile); Polymer Resources, Ltd. v. Keeney, supra, 561 (mere conclusory assertion that agency will not reconsider decision does not excuse compliance, on basis of futility, with exhaustion requirement); Housing Authority v. Papandrea, supra, 222 Conn. 430 (fact that commissioner previously indicated how he would decide CT Page 8724 plaintiff's claim did not excuse compliance, on ground or futility, with exhaustion requirement); Concerned Citizens of Sterling v. Sterling, supra, 204 Conn. 557-60 (futility is more than mere allegation that administrative agency might not grant relief requested).
Fish Unlimited v. Northeast Utilities Service Co., 254 Conn. 1, 11-14,757 A.2d 262 (2000).
The issue presented was considerably refined at the hearing. The question is not whether an administrative remedy exists but whether the administrative remedies that exist are inadequate or futile. DPH identifies two existing administrative remedies. First, AMR can file a petition with DPH concerning EFK's activities. Significantly, AMR has itself filed three such administrative petitions prior to commencing this lawsuit. The administrative process set into motion by those petitions has not been completed. Second, AMR could file a request for a declaratory ruling regarding "the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency." Conn. Gen. Stat. § 4-176. Accord Conn. Agencies Regs. § 19a-9-12. AMR has not filed a request of this description. AMR does not dispute the existence of these remedies. It argues, instead, that they are futile or inadequate. This argument must now be examined in detail.
AMR concedes in its brief that it has filed three complaints with DPH. The first such administrative complaint is incorporated by reference in the judicial complaint filed in this action. Each administrative complaint concerns a separate incident, and each of these incidents is also alleged in AMR's judicial complaint filed in the present action. (Thus, three of the five incidents alleged in the judicial complaint have resulted in administrative complaints filed by AMR.) These incidents occurred on February 28, 2000; May 2, 2001; and May 14, 2001.
The administrative complaint concerning the incident of February 28, 2000 was initiated by a letter written to DPH by Linda Wihbey, AMR's counsel on March 14, 2000. On March 22, 2000, DPH wrote to Wihbey that it "is responsible for investigating complaints regarding care and service issues for individuals/entities which we regulate" and that "Elizabeth Johnston, Special Investigator, has been assigned to investigate the allegations." The letter assigns a petition number to the case. On May 15, 2001, DPH wrote Wihbey a second letter referencing this administrative complaint. This letter states that, "Pursuant to Connecticut General Statutes § 19a-14, this Department is responsible for handling petitions against regulated health professionals. The CT Page 8725 investigation of the petition, referenced above, has been concluded. A violation letter has been forwarded to EFK of CT, Inc. d/b/a Nelson Ambulance as a result of the findings of the investigation."
EFK and the Attorney General established at the hearing that the administrative process commenced by AMR is ongoing. EFK is administratively contesting the violation letter just mentioned. The Attorney General notified the court that DPH is presently conducting a serious investigation of all three administrative complaints submitted to it by AMR. The next step in the administrative process will be DPH's decision whether or not to commence a contested case against EFK at the administrative level. This decision, the Attorney General informs the court, is likely to be made in approximately six weeks. A contested case, as mentioned, could result in a wide range of sanctions against EFK. Conn. Agencies Regs. § 19a-179-15.
AMR would not be a party in a contested case. It could, however, file a written request to participate as an intervenor. Conn. Agencies Regs. § 19a-9-27 (a). The presiding officer would then "determine whether and to what extent the proposed intervenor may participate in the hearing, taking into account whether such participation will furnish assistance to the agency in resolving the issues." Conn. Agencies Regs. § 19a-9-27 (c). In DPH's opinion, AMR would not have standing to appeal an adverse administrative ruling to the Superior Court, even if it were granted intervenor status. Without deciding the issue, the court will assume the accuracy of this opinion for purposes of the present case.
The question before the court is whether the administrative procedure that AMR has voluntarily commenced is a futile or inadequate remedy that it is not required to exhaust. "An administrative remedy is futile or inadequate if the agency is without authority to grant the relief requested." Fish Unlimited v. Northeast Utilities Service Co., supra,254 Conn. at 14. This predicate is not satisfied here.
"It is futile to seek a remedy only when such action could not result in a favorable decision and invariably would result in further judicial proceedings." OG Industries, Inc. v. Planning Zoning Commission,232 Conn. 419, 429, 655 A.2d 1121 (1995). By this standard, the petition process that AMR has initiated cannot be said, at least now, to be futile. AMR's belief that its own petitions will be unavailing in obtaining the relief it seeks is purely speculative. The submissions of the parties establish that the administrative process is currently proceeding. The outcome of that process cannot, of course, be predicted, but DPH's administrative powers are sufficiently extensive that it has the authority to grant the relief requested. As already described, Conn. CT Page 8726 Gen. Stat. § 19a-17 gives DPH a wide array of disciplinary powers, including the ability to suspend or revoke licenses and to impose probationary status with appropriate conditions.
For much the same reason, the administrative procedure that AMR has voluntarily commenced cannot be said to be inadequate. "It is not the [plaintiff's] preference for a particular remedy that determines whether the remedy before the agency is inadequate . . . and an administrative remedy, in order to be `adequate', need not comport with the [plaintiff's] opinion of what a perfect remedy would be." ConnecticutMobile Home Association, Inc. v. Jensen's, Inc., 178 Conn. 586, 590,424 A.2d 285 (1979). The fact that AMR is not entitled to party status before the agency does not render the administrative remedy it seeks inadequate. This proposition is well established in case law. Thus, inConcerned Citizens of Sterling v. Town of Sterling, 204 Conn. 551,529 A.2d 666 (1987), the Supreme Court held that the available administrative remedy, initiated by filing a complaint with the state elections enforcement commission, was adequate in spite of the fact that the commission had no obligation to refer the matter to the Attorney General for injunctive relief and, if the matter was so referred, the Attorney General had no obligation to seek the injunctive relief requested. 204 Conn. at 558. Similarly, in Fish Unlimited v. NortheastUtilities Service Co., supra, the exhaustion doctrine was held to require the plaintiff to intervene in an agency's permit renewal proceedings involving the defendant utility. Inadequacy could be shown only if "the outcome of the defendants' permit renewal application has been predetermined by the department." 254 Conn. at 19. Even more recently, inKish v. Cohn, 59 Conn. App. 236, 756 A.2d 313 (2000), the Appellate Court held that the plaintiff's failed to exhaust their administrative remedies by failing to collect the signatures of twenty-five persons to trigger a public hearing on the removal of a dam. All of these cases required exhaustion of administrative procedures in which the complainant would have had less than full party status. The complainants in Kish v. Cohn
would, by signing a petition, not even have had intervenor status. These considerations did not render the administrative process inadequate. To repeat the analysis of Fish Unlimited v. Northeast Utilities ServiceCo., supra, "An administrative remedy is futile or inadequate if the agency is without authority to grant the relief requested."254 Conn. at 14. That predicate is not satisfied here.
"Traditionally, the exhaustion of administrative remedies doctrine has been applied where the administrative proceedings were available to be invoked before the institution of the action, and the decision to invoke or forgo the administrative remedy at issue was within the control of the party against whom the doctrine was applied." Loulis v. Parrott,241 Conn. 180, 197, 695 A.2d 1040 (1997). Under this analysis, the CT Page 8727 exhaustion doctrine is fully applicable here. The administrative remedies were not only available to be invoked before the institution of the action, but AMR, the party against whom the exhaustion doctrine is now applied, affirmatively invoked those very remedies before instituting this action. Having invoked available administrative remedies, AMR must exhaust them.
Because the evidence establishes that the petition remedy is presently available to (and already invoked by) AMR, the Superior Court has no present jurisdiction over this matter. Under these circumstances, it is unnecessary to discuss the adequacy of the declaratory ruling option identified by DPH as a remedy that must also be exhausted.
The motion to dismiss is granted.
 Jon C. Blue Judge of the Superior Court