[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTION TO STRIKE
 I FACTS
The plaintiff, Julie Kurzyna, filed a nine count complaint against the defendants, the city of New Britain (city) and Norman F. Wnuk, individually and in his official capacity, on September 18, 2000. The plaintiff alleges the following facts in support of her complaint. The plaintiff, together with her late husband, purchased property known as 150 Reservoir Road, New Britain, Connecticut in 1983. On May 22, 1985, the Kurzynas obtained a building permit from the city and began building a residential structure on the property. The city revoked the permit on June 17, 1985, reissued the permit in 1986, and then revoked the permit a CT Page 4936 second time. As of the present date, the residential structure remains unfinished, uninhabited and contains many defects. Specifically, the foundation has developed cracks approximately three inches wide and part of the structure is splitting away.
The plaintiff alleges that she first became aware that the condition of her property was caused by the city when she learned of a letter dated September 14, 1998, which was written by the department of environmental protection (DEP) explaining the history of the property, including the presence of industrial sludge. On or about April 1, 1999, the DEP completed a Phase I Site Assessment Report for the property confirming that the city disposed of potentially four million gallons of industrial sludge onto the plaintiffs property. The report also provided the plaintiff with the following additional facts. In 1951, the city purchased a four million gallon industrial lagoon known as Lock Shop Pond from the American Hardware Corporation. From approximately 1951 until 1958 or 1959, the city disposed of industrial sludge and/or other contaminants from Lock Shop Pond to the property at issue. In the early 1950s, the city turned Lock Shop Pond into a parking lot and sold it to the department of transportation in 1976. The property at issue was covered over in either 1958 or 1959 and was known as 146 Reservoir Road until approximately March 1976.
The plaintiff filed the current action on September 18, 2000, alleging that the defects in her structure are caused by instability in the ground due to the presence of industrial sludge and other contaminants underground. The plaintiff alleges that she is precluded from building on the property or making use of the property and that its value has been greatly reduced. The plaintiff further alleges that the city has assessed the property at values exceeding its actual market value and that she has paid excessive taxes to the defendant based on overvalued assessments.
On July 25, 2001, the plaintiff filed a revised nine count complaint in response to the defendants' November 3, 2000, request to revise.[1] In the complaint, the plaintiff alleges negligence pursuant to General Statutes § 52-557n (count one), nuisance pursuant to § 52-557n
(count two), trespass (count three), strict liability (count four), injunctive relief (count five), declaratory and equitable relief pursuant to General Statutes § 22a-16 (count six), negligent infliction of emotional distress (count seven), a violation of 42 U.S.C. § 1983 and other federal laws (count eight) and a violation of article first, §§7 and 8, of the constitution of Connecticut (count nine) against the defendants. The plaintiff also attached the State of Connecticut Phase I Environmental Site Assessment dated April 1, 1999, as an exhibit to her revised complaint, and frequently references this exhibit in her complaint. CT Page 4937
The defendants now move to strike paragraphs 23, 25(b) — (e), (i) and (j) and a portion of paragraph 26 of count one and counts two through nine of the plaintiff's revised complaint on numerous grounds. The defendants filed a memorandum in support of their position and the plaintiff filed a timely memorandum in opposition. The defendants further filed a reply memorandum and the plaintiff subsequently filed a supplemental memorandum.
 II DISCUSSION
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim on which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Waters v. Autuori, 236 Conn. 820, 825, 676 A.2d 357 (1996). "if facts provable under the allegations would support a defense or a cause of action, the motion to strike must be denied." RK Constructors, Inc.v. Fusco Corp., 231 Conn. 381, 384, 650 A.2d 153 (1994). "The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Waters v. Autuori, supra,236 Conn. 825.
 A Count One: Negligence
The defendants move to strike paragraphs 23, 25(b) — (e), (i) and (j) and a portion of paragraph 26 of count one of the plaintiff's revised complaint. "Although there is a split of authority, most trial courts follow the rule that a single paragraph of a pleading is subject to a motion to strike only when it attempts to set forth all of the essential allegations of a cause of action or defense. . . ." (Internal quotation marks omitted.) Pinho v. Daly, Superior Court, judicial district of New Britain, Docket No. 500895 (May 3, 2001, Shapiro, J.); Cain v.Destefano, Superior Court, judicial district of New Haven, Docket No. 420347 (December 17, 1999, Zoarski, J.). Here, since the defendants, in essence, argue that the paragraphs sought to be stricken set forth allegations of separate causes of action, the court will address the merits of the defendants' motion to strike these individual paragraphs.
 1
CT Page 4938 Excessive Taxes
The defendants move to strike paragraphs 23 and 25(j) and a portion of paragraph 26 of count one of the plaintiffs revised complaint on the ground that the exclusive remedy for the plaintiff's claim for excessive taxes is set forth under General Statutes § 12-119. The defendants further argue that the one year statute of limitations set forth in the statute has expired.
In response, the plaintiff argues that she can recover for the overpayment of taxes in her negligence count. Specifically, the plaintiff argues that § 12-119 is not the exclusive remedy and that, regardless, an action of assumpsit remains and was not eradicated by § 12-119. With regard to the one year statute of limitations, the plaintiff contends that she did not become aware of the city's involvement until September 14, 1998, and that she could not have obtained the information necessary within one year of the last property assessment in order to bring a timely claim.
Section 12-119 states in relevant part that "[w]hen it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which . . . was manifestly excessive . . . the owner thereof . . . may, in addition to the other remedies provided bylaw, make application for relief to the superior court for the judicial district in which such town or city is situated." (Emphasis added.)
In Norwich v. Lebanon, 200 Conn. 697, 513 A.2d 77 (1986), the Supreme Court noted that it has previously declared "that the enactment of §12-119 merely added one more to the recognized remedies of an appeal to the board of tax review and of assumpsit for money illegally received and retained." (Internal quotation marks omitted.) Id., 710. The plain language of § 12-119 suggests that it is not the exclusive remedy for claims of manifestly excessive taxes. The language provides that the owner may apply for relief pursuant to § 12-119, in addition to other remedies provided for by law. See General Statutes § 12-119.
This court finds that § 12-119 is not necessarily the exclusive remedy for a claim of excessive taxes. This does not, however, end the court's inquiry. The court must next determine whether the plaintiff's claim is barred by the one year statute of limitations set forth in the statute. Section 12-119 provides in pertinent part that "[s]uch application may be made within one year from the date as of which the property was last evaluated for purposes of taxation. . . ." CT Page 4939
In Norwich v. Lebanon, supra, 200 Conn. 697, the Court found it apparent that the legislative purpose behind §§ 12-118 and 12-119
"would be thwarted if an action for refund of taxes paid upon a disputed assessment could be brought far beyond the time limits for contesting an assessment established by these statutes." (Emphasis added.) Id., 710. "The contention of the plaintiff . . . that it can circumvent the time limitations of §§ 12-118 and 12-119 by resorting to the ancient writ of indebitatus assumpsit is incompatible with the conception that such an action is governed by equitable principles." Id., 711. "Although §12-119 may have been enacted `in addition to the other remedies provided by law' and thus did not wholly remove indebitatus assumpsit as a vehicle for obtaining a tax refund . . . the statute did not exempt such an action from application of the equitable principles that have historically controlled its use." (Citation omitted; internal quotation marks omitted.) Id., 712.
Here, the plaintiff alleges that the city assessed the property at values exceeding its actual market value and that the Kurzynas and/or Kurzyna have paid excessive taxes to the city based upon these overvalued assessments. (Revised Complaint, Count One, ¶¶ 23 and 25(j).) The plaintiff argues that her claim should be equitably tolled because she had no knowledge of the city's involvement until September 14, 1998, and because she could not have obtained the information necessary within one year of the last property assessment.
Although the plaintiff discovered the city's involvement from a letter dated September 14, 1998, she did not commence this action until September 18, 2000. The plaintiff, therefore, brought this action more than a year after discovering the city's involvement. Further, the plaintiff fails to allege the date of the last property assessment. Although the plaintiff argues that she was unable to obtain the information necessary within one year of the last property assessment, she has failed to allege such facts in her complaint. Based on the plaintiff's failure to allege these facts, the court cannot determine how far beyond the time limits the plaintiff is attempting to make her claim for excessive taxes. The court is unwilling to extend the statute of limitations in this case.
Since the plaintiff failed to file this claim for excessive taxes within the one year statute of limitations, her claim is untimely. Accordingly, the court grants the defendants' motion to strike paragraphs 23 and 25(j) and the portion of paragraph 26 pertaining to excessive taxes in count one of the plaintiff's revised complaint.[2]
 2
CT Page 4940 Governmental Immunity
The defendants argue that the court should strike paragraphs 25(b) through (e) and (i) in count one of the plaintiff's revised complaint because the claims are barred by governmental immunity pursuant to General Statutes §§ 52-557n (b) (7) and (8). The plaintiff, in response, argues that her claims are not barred and, further, argues that her claims fall within the statutory exceptions set forth in subsections (7) and (8).
"It is well settled that municipalities and their employees are immune from liability for the negligent performance of discretionary acts." Fordv. West Haven, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 051003 (July 14, 1998, Ripley, J.). The immunity is limited, however, and subject to the exceptions set forth in §§ 52-557n
(b) (7) and (8). Section 52-557n (b) states in relevant part that "a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from . . . (7) the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension or revocation or such failure or refusal constitutes a reckless disregard for health or safety; (8) failure to make an inspection or making an inadequate or negligent inspection of any property, other than property owned or leased by or leased to such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances. . . ." (Emphasis added.)
In her complaint, the plaintiff alleges that although the city had notice of the dangerous and defective condition, it failed to monitor and inspect the property to determine the extent of the contamination in reckless disregard of health and safety concerns. (Revised Complaint, Count One, ¶ 25(d).) The plaintiff asserts that the city, on two separate occasions, and in reckless disregard for health and safety considerations, issued building permits to the Kurzynas to build on the property when it knew or should have known of the dangerous or defective condition of the property. (Revised Complaint, Count One, ¶ 25(h).) The plaintiff further alleges that on two separate occasions, the city revoked the permits and, to date, she is precluded from building on the property due to the instability of the ground. (Revised Complaint, Count CT Page 4941 One, ¶¶ 15, 16, 20 and 21.)
"Under §§ 52-557n (b) (7) or (8) the court considers the conduct of the municipality's employees, officers or agents in determining whether a municipality's conduct constituted a reckless disregard for health or safety." Greystone Condominium Assn., Inc. v. Boulder Run, LLC, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 370368 (May 7, 2001, Brennan, J.). "Simply using the word `reckless' . . . is not enough. A specific allegation setting out the conduct that is claimed to be reckless or wanton must be made." (Internal quotation marks omitted.) Id.
In construing the complaint in the light most favorable to the plaintiff, this court finds that the plaintiff has alleged sufficiently conduct by the city that constitutes a reckless disregard for the health and safety of others. The plaintiff has alleged that the city was aware that it had disposed of industrial sludge on the plaintiff's property. The plaintiff avers that, despite its knowledge, the city failed to inspect the property for contamination in reckless disregard for the health and safety of herself, her family and neighboring properties and, further, has alleged that the city on two different occasions issued building permits and then subsequently revoked them.
The plaintiff has alleged sufficiently conduct falling within the exceptions to §§ 52-557n (b) (7) and (8). Accordingly, the defendants' motion to strike paragraphs 25(b) through (e) and (i) in count one of the plaintiff's revised complaint is denied.
 B Count Two: Nuisance
The defendants next move to strike count two of the plaintiff's complaint on the ground that the plaintiff has failed to allege sufficiently a cause of action for nuisance. Specifically, the defendants argue that the plaintiff has failed to allege that the city is an owner of neighboring property or that the city's use is causing a nuisance.
The plaintiff concedes that Connecticut case law does not recognize a cause of action for nuisance when the nuisance is committed on one's own property or when the nuisance is not committed from a neighboring property. The plaintiff asks the court to instead follow California case law and, therefore, allow a cause of action against a preceding owner of property.
The plaintiff raises her nuisance claim pursuant to General Statutes CT Page 4942 § 52-557n (a) (1). Section 52-557n (a) (1) states in relevant part that "a political subdivision of the state shall be liable for damages to person or property caused by . . . (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance. . . ."
In Pestey v. Cushman, 259 Conn. 345, ___ A.2d ___ (2002), the Court clarified the law on private nuisance and adopted the basic principles of § 822 of the Restatement (Second) of Torts. "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." (Internal quotation marks omitted.) Id., 352. "The law of private nuisance springs from the general principle that `[i]t is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor.'" (Emphasis added.) Id. "The essence of a private nuisance is an interference with the use and enjoyment of land." (Internal quotation marks omitted.) Id. "According to the Restatement (Second) of Torts, a plaintiff must prove that: (1) there was an invasion of the plaintiff's use and enjoyment of his or her property; (2) the defendant's conduct was the proximate cause of the invasion; and (3) the invasion was either intentional and unreasonable, or unintentional and the defendant's conduct was negligent or reckless." Id., 358.
The plaintiff alleges that the contamination of the property has a natural tendency to create danger and inflict injury upon person or property because it causes instability of the soil, as well as soil, water and air pollution. (Revised Complaint, Count Two, ¶ 28(a).) The plaintiff further alleges that the contamination is a continuing danger, that the use of the property continues to be unreasonable and unlawful and that the contamination proximately caused the plaintiff's losses and rendered the property useless and unsaleable. (Revised Complaint, Count Two, ¶ 28(b) — (d).) Lastly, the plaintiff alleges that "[b]y disposing the contents of Lock Shop Pond to the property and failing to monitor, control and/or remedy the resulting contamination, New Britain created the contamination of the Property." (Revised Complaint, Count Two, ¶ 28(e).)
In BD Products, Inc. v. Vitek Research Corp., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 060362 (August 17, 1998, Corradino, J.) (23 Conn.L.Rptr. 90), the plaintiff made similar allegations of nuisance arising out of the defendant's actions of depositing hazardous waste over a seven year period. Id. The defendant had been a lessee of the prior owner of the property and the plaintiff was the current owner of the property at issue. Id. The plaintiff alleged that the deposits were continuing to affect the plaintiff's property and that the defendant had unreasonably polluted the plaintiff's land. Id. In CT Page 4943 reviewing the plaintiff's private nuisance claim, the court held that "no action in private nuisance will lie against the former lessee of the land that was subsequently purchased by the plaintiff because . . . the alleged wrong does not arise out of the use of property which inflicts harm on neighboring property — the same land that was leased was later purchased." Id., 93. The court reviewed several general authorities that discussed private nuisance, and "the court could not find a private nuisance case where the alleged harm to property forming the basis of the nuisance claim did not arise out of the tortious `use' [broadly defined] of neighboring property." Id.
Moreover, that court quickly dismissed of the California case law which the plaintiff in this case asks the court to follow. The court noted that "California allows a nuisance action against, for example, a prior lessee of the same land but, in that state, nuisance is a creature of statute and their courts explicitly state that under their statute it is not necessary that a nuisance have its origin in neighboring property." (Internal quotation marks omitted.) Id., 95 n. 4; see Mangini v.Aerojet-General Corp., 230 Cal.App.3d 1125, 281 Cal.Rptr. 827 (1991).
This court finds BD Molded Products, Inc. v. Vitek Research Corp., supra, 23 Conn.L.Rptr. 90, to be persuasive and, therefore, follows its holding. The court finds no reason to depart from established Connecticut case law on nuisance. While the plaintiff has set forth the bare allegations of nuisance in her complaint,[3] the plaintiff simply cannot sustain this cause of action under Connecticut law without alleging that the city inflicted such harm from a neighboring property.
Accordingly, the court grants the defendants' motion to strike count two of the plaintiff's revised complaint.
 C Continuing Trespass
The defendants also move to strike count three of the plaintiff's revised complaint on the ground that the plaintiff has failed to allege that the act of the placement of the hazardous waste was unauthorized and the product of a trespass when it occurred. The plaintiff relies on the Restatement Second of Torts in support of her argument and, further, argues that the continuing trespass is the dumping of industrial sludge on the property by the city.
"A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it." 2 CT Page 4944 Restatement (Second), Torts § 161 (1965). In BD Molded Products,Inc. v. Vitek Research Corp., supra, 23 Conn.L.Rptr. 90, however, the court observed that the Connecticut courts have rejected this continuing trespass argument in situations where the hazardous waste was placed on property by the defendant, but the placement was not done tortiously. Id., 94.
Here, the plaintiff alleges that the city's placement of the industrial sludge or other contaminants on her property was tortious at the time that it occurred. (Revised Complaint, Count One, ¶ 25(a) — (j) and Count Three, ¶ 27(b).) The plaintiff further alleges that from approximately 1951 to 1958-59, the city repeatedly disposed or repeatedly approved, directed, allowed or permitted the disposal of industrial sludge or other contaminants onto the property at issue. (Revised Complaint, Count One, ¶ 7.) The plaintiff does not, however, allege whether the city ever owned the property or what her factual basis is for asserting that the city's actions were tortious.[4] In the State of Connecticut Phase I Environmental Site Assessment, the property was described as an abandoned stone quarry at the time the alleged conduct occurred. (Revised Complaint, Exhibit One.) Further, the plaintiff had no property interest in this land when the alleged tortious acts occurred, as she and her late husband purchased the property approximately thirty years after the alleged tortious conduct occurred.
While the plaintiff alleges that the city's activity of placing industrial sludge on the property was tortious, she provides no facts supporting this assertion. Accordingly, the court grants the defendants' motion to strike count three of the plaintiff's revised complaint.
 D Strict Liability
The defendants next move to strike count four of the plaintiffs revised complaint on the ground that the facts alleged are insufficient to state a claim for strict liability. Specifically, the defendants argue that the plaintiff has alleged that the waste is non-hazardous and that it does not pose a threat to human safety. The plaintiff argues that she has alleged sufficiently that the city's activity is ultra hazardous and that the property is polluted.
"The factors for a court to consider in determining whether an activity is abnormally dangerous are listed in § 520 of the Restatement as: (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of CT Page 4945 reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes." (Internal quotation marks omitted.) Green v. Ensign-Bickford Co., 25 Conn. App. 479, 486,592 A.2d 1383, cert. denied, 220 Conn. 919, 597 A.2d 343 (1991). "In determining whether the danger is abnormal, the factors listed . . . are all to be considered, and are all of importance. Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. On the other hand it is not necessary that each of them be present, especially if others weigh heavily." (Internal quotation marks omitted.) Id.
In French Putnam LLC v. County Environmental Services, Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 166445 (July 21, 2000, D'Andrea, J.) (27 Conn.L.Rptr. 684), the court observed that "[t]he judges of the Superior Court have found that the disposal of toxic and hazardous materials constitutes an abnormally dangerous activity." (Emphasis in original.) Id., 694 (holding that the plaintiff failed to allege sufficient facts regarding the disposal of hazardous materials, but noting that the plaintiff did not directly allege or use the word "disposal"); see also Mather v. BirkenManufacturing Co., Superior Court, judicial district of Hartford, Docket No. 564862 (December 8, 1998, Hennessey, J.) (23 Conn.L.Rptr. 443) (denying the defendant's motion to strike because the plaintiffs did not merely allege that the defendant stored or used hazardous materials; the plaintiffs further alleged that the defendant disposed of hazardous and toxic chemicals and wastes); P.R.I.C.E., Inc. v. Keeney, Superior Court, judicial district of Hartford, Docket No. 054269 (July 10, 1998, Hale,J.) (22 Conn.L.Rptr. 373) (concluding that while the disposal of hazardous waste may constitute an ultra hazardous activity, the facts alleged were insufficient to state a claim for strict liability). The cases tend to distinguish between the disposal and storage of hazardous materials, and generally hold that the mere storage and use of hazardous material is not an ultra hazardous activity and, therefore, does not support a strict liability claim. See French Putnam, LLC v. CountyEnvironmental Services, Inc., supra, 27 Conn.L.Rptr. 684; Skelton v.Chemical Leaman Tank Lines, Superior Court, judicial district of New Haven, Docket No. 359236 (May 13, 1996, Corradino, J.) (17 Conn.L.Rptr. 56).
In this case, the plaintiff is clearly alleging that the city'sdisposal of industrial sludge and/or other contaminants onto the property constitutes an ultra hazardous activity. (Revised Complaint, Count Four, ¶ 27.) The plaintiff avers that the city disposed of approximately four million gallons of industrial waste onto the property. (Revised CT Page 4946 Complaint, Count One, ¶ 8.) In further support of her allegations, the plaintiff attached an exhibit and references the exhibit in count one of her complaint. (Revised Complaint, Exhibit One.) The plaintiff argues that this report identifies semi-volatile organic compounds in the industrial sludge on the property and finds that specific semi-volatile compounds exceed the GA pollutant mobility. (Plaintiff's Memorandum, p. 17.)
The plaintiff alleges that a dangerous and defective condition has existed on the property for an unreasonable length of time and that the city has failed to warn owners of the possibility of contamination. (Revised Complaint, Count One, ¶ 25(e) — (g).) The plaintiff further asserts that the harm that results will be great in that, due to the contamination, she is precluded from building on the property and the property is not saleable or its value has been greatly reduced. (Revised Complaint, Count One, ¶¶ 21 and 22.) Lastly, the plaintiff alleges that the city failed to take any action in remedying the dangerous and defective condition. (Revised Complaint, Count One, ¶ 25(b) — (c).)
This court relies on the cases holding that the disposal of hazardous materials constitutes an abnormally dangerous activity. The plaintiff has alleged sufficiently that the city disposed of hazardous materials, i.e., industrial sludge and other contaminants, to the property that she now owns. This court finds that the plaintiff has alleged sufficiently facts to state a claim for strict liability for an ultra hazardous activity.
Accordingly, the defendants' motion to strike count four of the plaintiffs revised complaint is denied.
 E Injunctive Relief
The defendants further move to strike count five of the plaintiff's revised complaint on the ground that the plaintiff has failed to allege sufficiently a claim for injunctive relief. Specifically, the defendants argue that the city's actions ceased over forty years ago and, therefore, the plaintiff has alleged no action that can be enjoined. The plaintiff responds by arguing that injunctive relief is available to undo a continuing wrong.
"[A] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." (Internal quotation marks omitted.) Lawrence Brunoli, Inc. v. Branford,247 Conn. 407, 416, 722 A.2d 271 (1999). The plaintiff incorporates CT Page 4947 paragraphs one through 26 from count one and paragraphs twenty-seven through thirty from count two into her claim for injunctive relief. The plaintiff alleges that the acts of the city are a nuisance that have caused and will cause her irreparable injury. (Revised Complaint, Count Five, ¶ 30.) The plaintiff also alleges that the city's acts are continuous, recurrent and permanent and that the nuisance will continue unless the property is restored and the industrial sludge and waste are removed. (Revised Complaint, Count Five, ¶ 30.) Lastly, the plaintiff alleges that she has no adequate remedy at law. (Revised Complaint, Count Five, ¶ 31.)
In essence, the plaintiff's claim for injunctive relief is based solely on her private nuisance claim. The court has previously determined that the plaintiff has not pleaded a legally sufficient cause of action for private nuisance in part II B of this opinion. The plaintiff cannot, therefore, satisfy the irreparable harm prong in seeking injunctive relief. Accordingly, the court grants the defendants' motion to strike count five of the plaintiff's revised complaint.
 F Declaratory and Equitable Relief Pursuant to General Statutes § 22a-16
The defendants next move to strike count six of the plaintiffs revised complaint on the ground that the plaintiff has failed to allege sufficiently a claim for declaratory and equitable relief. The defendants argue that the plaintiff has failed to allege sufficiently proof that any natural resource has been unreasonably polluted, impaired or destroyed. In response, the plaintiff argues that she has alleged that the industrial sludge and waste has come into contact with both the ground and below-ground water and that water is a natural resource.
General Statutes § 22a-16 provides in pertinent part that "anyperson . . . may maintain an action in the superior court . . . for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in theair, water and other natural resources of the state from unreasonable pollution, impairment or destruction. . . ." (Emphasis added.) "Statutes such as the EPA are remedial in nature and should be liberally construed to accomplish their purpose." Manchester Environmental Coalition v.Stockton, 184 Conn. 51, 57, 441 A.2d 68 (1981). There is no requirement under the statute that the defendant act negligently or otherwise CT Page 4948 culpably. See Blackburn v. Miller-Stephenson Chemical Co., Superior Court, judicial district of Danbury, Docket No. 314089 (September 11, 1998, Leheny, J.).
Here, the plaintiff has alleged that the city's conduct has or is reasonably likely to pollute, impair, or destroy the public trust in the air, water or other natural resources of the state. (Revised Complaint, Count Six, ¶ 34.) The plaintiff alleges that the sludge, industrial waste and other pollutants include semi-volatile organic compounds at concentrations exceeding the GA pollutant mobility criteria of Connecticut State Regulations §§ 22a-133k-1 through 22a-133k-3. (Revised Complaint, Count Six, ¶ 34(h).) The plaintiff asserts that these contaminants have been exposed to the air and, further, alleges that the contaminants have made contact with ground and below-ground water on her property and that they continue to be transported via water flow to locations outside of her property. (Revised Complaint, Count Six, ¶¶ 34(g) and (i).) Both air and water are expressly listed as natural resources in § 22a-16. Therefore, based on these allegations, the plaintiff has alleged sufficiently that the city's conduct has or is reasonably likely to pollute, impair, or destroy the public trust in the air, water or other natural resources of the state.
In construing the complaint in the light most favorably to the plaintiff, this court finds that the plaintiff has alleged sufficiently a claim for declaratory relief under General Statutes § 22a-16. Accordingly, the defendants' motion to strike count six of the plaintiff's revised complaint is denied.
 G Negligent Infliction of Emotional Distress
The defendants next move to strike count seven of the plaintiff's revised complaint on the ground that the plaintiff has failed to allege sufficiently a cause of action for negligent infliction of emotional distress. The defendants argue that any disposal that occurred years before the plaintiff took title cannot constitute extreme and outrageous conduct and, further, argue that the plaintiff's claim is based solely on damage to property. The plaintiff argues that the city's conduct was sufficiently unreasonable such as to meet the standard for her claim and further contends that her claim is based on more than mere damage to her property.
"[I]n order to state . . . a claim [for negligent infliction of emotional distress], the plaintiff has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable CT Page 4949 risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) Parsons v. United Technologies, 243 Conn. 66, 88, 700 A.2d 655
(1997). "[R]ecovery for unintentionally-caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact. Nevertheless . . . the protection the law accords to `the interest in one's peace of mind' . . . must be limited so as not to open up a wide vista of litigation in the field of bad manners, where relatively minor annoyances had better be dealt with by instruments of social control other than the law." (Citation omitted; internal quotation marks omitted.) Montinieri v. Southern New EnglandTelephone Co., 175 Conn. 337, 345, 398 A.2d 1180 (1978). "`Unreasonable conduct' has been interpreted as conduct performed in an inconsiderate, humiliating or embarrassing manner." (Internal quotation marks omitted.)Early v. Derby Neck Library, Superior Court, judicial district of Ansonia-Milford at Derby, Docket No. 072405 (September 27, 2001, Nadeau,J.) (30 Conn.L.Rptr. 450, 453).
In support of her claim, the plaintiff alleges that the city knew or should have known that its conduct involved an unreasonable risk of causing emotional distress to the plaintiff and that the city's conduct was a direct and proximate cause of her emotional distress. (Revised Complaint, Count Seven, ¶¶ 31 and 32.) The plaintiff alleges that she has suffered severe emotional distress and, further, alleges that she was forced to abandon her property and fears that the industrial sludge has harmed her property and herself individually, as well as her immediate family. (Revised Complaint, Count Seven, ¶¶ 33 and 34.) The plaintiff also incorporates paragraphs one through twenty-five of count one and paragraphs twenty-six through twenty-nine of count two into her emotional distress claim.
A review of a number of decisions by judges of the Connecticut Superior Court reveals that the law does not recognize a claim for negligent infliction of emotional distress based solely on damage to property. See e.g., Early v. Derby Neck Library, supra, 30 Conn.L.Rptr. 450; Hixon v.Eilers, Superior Court, judicial district of Hartford, Docket No. 592937 (February 14, 2001, (Fineberg, J.) (29 Conn.L.Rptr. 254); Deleo v. Reed, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 172435 (January 3, 2000, Hickey, J.). The plaintiff cannot, therefore, recover for negligent infliction of emotional distress based on her fear that the industrial sludge has harmed her property.
In addition to her property damage claim, the plaintiff alleges that she has suffered emotional distress and fears that the industrial sludge has harmed herself and her family. (Revised Complaint, Count Seven, ¶ 34.) The plaintiff has failed, however, to allege any facts CT Page 4950 supporting this claim. The plaintiff alleges that she and her husband obtained building permits from the defendant which were revoked on two separate occasions, and that the residential structure remains unfinished and is uninhabited. (Revised Complaint, Count One, ¶¶ 14 through 17.) The plaintiff further alleges that due to the contamination, she is precluded from building on the property or making use of the property, and that the property is not saleable and its value has been greatly reduced. (Revised Complaint, Count One, ¶¶ 21 and 22.)
Despite the fact that the plaintiff alleges that the city issued the permits in reckless disregard for health and safety reasons, the plaintiff has failed to allege sufficiently a fear of harm to herself to support her claim. Based on her allegations, the plaintiffs claim of emotional distress is directly related to the damage to her property and the financial losses she has incurred as a result. Since the property remains unfinished and uninhabited, the court cannot find that the plaintiff has alleged a negligent infliction of emotional distress claim based on anything other than property damage. The plaintiff cannot simply allege that she fears the industrial sludge will harm either herself or her family without facts to support this conclusion.
A negligent infliction of emotional distress claim based on property damage is not a legally cognizable claim in Connecticut. Since the plaintiff is, in essence, arguing emotional distress based on damage to her property, her claim cannot withstand a motion to strike. Accordingly, the defendants' motion to strike count seven of the plaintiffs revised complaint is granted.
 H Violation of 42 U.S.C. § 1983 and Other Constitutional Claims
The defendants argue that the court should strike count eight of the plaintiff's revised complaint because there is no authority recognizing a violation of 42 U.S.C. § 1983 based on a Building Officials Code Association (BOCA) violation. The defendants further argue that none of the plaintiff's claims rise to the level of an unreasonable search and seizure. The plaintiff, in response, argues that she has legally viable federal claims because the BOCA charges were baseless and lacking in probable cause. The plaintiff further contends that the defendants knew or should have known that the charges lacked in probable cause because it was the city that created the dangerous and unsafe conditions on her property.
"To state a claim under § 1983, a plaintiff must allege the CT Page 4951 violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. . . . These two elements denote two separate areas of inquiry: the plaintiff must prove a constitutional or statutory violation and that violation must have been committed by the defendant acting under color of law." (Citations omitted; internal quotation marks omitted.) Wilson v. Hryniewicz, 38 Conn. App. 715,719-20, 663 A.2d 1073, cert denied, 235 Conn. 918, 665 A.2d 610 (1995).
The plaintiff alleges that she is a citizen of the United States and that Wnuk was the acting chief building inspector and acting zoning enforcement officer for the city at all relevant times. (Revised Complaint, Count Eight, ¶¶ 32 through 34.) "This action arises under the United States Constitution and, in particular, under the provisions of the Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States and arises under Federal law and invokes Title 28 of the United States Code, Sections 1331 and 1343(3) and Title 42 of the United States Code, Sections 1983 and 1988. (Revised Complaint, Count Eight, ¶ 35.)
In support of this claim, the plaintiff alleges that on or about March or April 1998, Wnuk caused her to be cited with violating BOCA State Building Code § 117.4 and forced her to appear in housing court and face fines, imprisonment and charges. (Revised Complaint, Count Eight, ¶ 37.) The plaintiff alleges that Wnuk, acting under color of law, unlawfully cited her without a warrant and without probable cause and that his actions were intentional, reckless and grossly negligent. (Revised Complaint, Count Eight, ¶ 38.) The plaintiff alleges that the defendants' actions violated her federally protected rights and caused her to suffer injuries and losses, namely, her right to freedom, her right to be free from unreasonable and unlawful seizure, and her right to procedural and substantive due process as guaranteed by thefourth, fifth and fourteenth amendments. (Revised Complaint, Count Eight, ¶¶ 39 and 41.) The plaintiff seeks monetary damages to address these violations and, further, alleges that she suffered emotional distress as a result of the defendants' actions. (Revised Complaint, Count Eight, ¶¶ 40 and 41.)
The plaintiff has sufficiently pleaded that Wnuk was acting under color of law when he cited her with violating BOCA State Building Code § 117.4. In furtherance of her § 1983 claim, the plaintiff alleges violations of numerous constitutional provisions. The allegations in the plaintiff's revised complaint, however, primarily address herfourth amendment claim.
The United States Supreme Court has stated that "§ 1983 allow[s] a CT Page 4952 plaintiff to seek money damages from government officials who have violated [her] Fourth Amendment rights." Wilson v. Layne, 526 U.S. 603,609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). The courts have held that administrative searches to enforce a municipal health and housing code require a warrant to satisfy the fourth amendment unless consent is obtained. See Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727,18 L.Ed.2d 930 (1967); Dillon v. Dept. of Public Health, Superior Court, judicial district of Hartford, Docket No. 570364 (September 30, 1998,McWeeny, J.) (23 Conn.L.Rptr. 73); Campbell v. Lasica, Superior Court, judicial district of Danbury, Docket No. 935380 (October 12, 1993,Flynn, J.).
Here, the plaintiff alleges that Wnuk unlawfully cited her with violations of BOCA State Building Code § 117.4 without a warrant and without probable cause. (Revised Complaint, Count Eight, ¶¶ 37 and 38.) The plaintiff also alleges that Wnuk's actions violated her federally protected rights and caused her to suffer injuries and losses, namely, her right to freedom, her right to be free from unreasonable and unlawful seizure, and her right to procedural and substantive due process as guaranteed by the fourth, fifth and fourteenth amendments. (Revised Complaint, Count Eight, ¶¶ 39 and 41.)
The plaintiff fails to allege, however, that there was an unlawful search and seizure of either her person or her property. While the plaintiff alleges that Wnuk was acting under color of law at the time of his actions, she does not allege specific facts describing Wnuk's actions or how these actions were intentional, reckless or grossly negligent. The plaintiff does not allege that Wnuk made an unlawful inspection of her property, without a warrant and without probable cause, leading to her citation for violating BOCA State Building Code § 117.4. The plaintiff only alleges that Wnuk caused her to appear in housing court and face fines, imprisonment and charges, without alleging whether she was actually detained on a pretrial status or ultimately fined or imprisoned for this alleged building code violation.
In construing the complaint in the light most favorably to the plaintiff, the court finds that the plaintiff has failed to allege sufficiently facts supporting her claims under 42 U.S.C. § 1983. Accordingly, the defendants' motion to strike count eight of the plaintiff's revised complaint is granted.
 I Connecticut Constitutional Claims
Lastly, the defendants move to strike count nine of the plaintiff's CT Page 4953 revised complaint on the grounds that BOCA citations do not violate the Connecticut constitution and that there is no private cause of action set forth under article first, § 8, of the constitution of Connecticut. The plaintiff argues that she has alleged sufficiently a cause of action under the Connecticut constitution.
The plaintiff brings this claim under article first, §§ 7 and 8, of the constitution of Connecticut.[5] The defendants correctly argue that the courts have rejected a private cause of action under article first, § 8, of the Connecticut constitution. See ATC Partnership v.Windham, 251 Conn. 597, 612-17, 741 A.2d 305 (1999), cert. denied,530 U.S. 1214, 120 S.Ct. 2217, 147 L.Ed.2d 249 (2000); Peters v.Greenwich, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 147192 (January 2, 2001, D'Andrea, J.) (28 Conn.L.Rptr. 671). This court follows these cases and similarly concludes that there is no private cause of action under article first, § 8, of the constitution of Connecticut.
The Supreme Court has, however, recognized a private cause of action for money damages for violations of article first, § 7, of the constitution of Connecticut based on allegedly unreasonable searches and seizures. See Binette v. Sabo, 244 Conn. 23, 710 A.2d 688 (1998). In part II H of this opinion, the court determined that the plaintiff failed to allege sufficiently a claim under federal law to be free from unreasonable searches and seizures due to Wnuk's failure to obtain a warrant, prior to bringing charges against her for violating BOCA. The plaintiff essentially relies upon the same factual allegations to support this claim. For the same reasons set forth in part II H of this opinion, the court finds that the plaintiff has alleged insufficiently a cause of action for money damages under article first, § 7, of the constitution of Connecticut.
Accordingly, the defendants' motion to strike count nine of the plaintiff's revised complaint is granted.
 III CONCLUSION
For the foregoing reasons, the court grants the defendants' motion to strike paragraphs 23 and 25(j) and a portion of paragraph 26 of count one and denies the defendants' motion with respect to the remaining paragraphs in count one of the plaintiff's revised complaint. The court further grants the defendants' motion to strike counts two, three, five, seven, eight and nine and denies the defendants' motion to strike counts four and six of the plaintiff's revised complaint. CT Page 4954
So ordered.
 BY THE COURT, ___________________ Peter Emmett Wiese, Judge