# CITY OF NORWICH, DEPARTMENT OF PUBLIC UTILITIES
## *v.* TOWN OF LEBANON
### (11818)

SPEZIALE, C. J., PETERS, HEALEY, SHEA and GRILLO, Js.

Argued March 1—decision released June 5, 1984

*S. Frank D'Ercole,* with whom were *Charles B. Spadoni* and *Richard N. Ziff,* corporation counsel, for the appellant (plaintiff).

*Jackson T. King, Jr.,* with whom was *Mary E. Holzworth,* for the appellee (defendant).

GRILLO, J. This appeal involves a dispute between the plaintiff city of Norwich[1] and the defendant town of Lebanon over the taxability of certain property owned by Norwich, used as a part of its municipal water system and located in Lebanon, which Norwich claims is exempt from taxation pursuant to General Statutes §§ 12-81 (4) and 12-76. The factual and procedural history underlying the present action is not in dispute.

The plaintiff owns approximately twenty-nine acres of watershed land located within the defendant's geographical limits. Prior to October, 1973, the plaintiff constructed on this land a water treatment plant and related improvements. The plant was used to furnish water to residents of Norwich, as well as to residents of other municipalities including Lebanon, where three users were located during the period in question. Until April, 1980, Norwich provided water to Lebanon's residents at a nominally higher rate than the rate it charged to its own residents. After April, 1980, however, Norwich equalized its rates.

---

[1] Although the plaintiff was styled in the complaint as "City of Norwich, Department of Public Utilities," the city of Norwich was properly considered to be the plaintiff, both by the trial court and the parties. The department of public utilities is a department of the city of Norwich and is under the jurisdiction, control, and management of the board of public utilities commissioners. See Charter, city of Norwich, Chapter XII, § 2. All property and assets of the department are vested in the city of Norwich. Id., § 1 (a).

In connection with the tax list of 1973, Lebanon's board of assessors forwarded a blank form to Norwich on which Norwich was requested to list property it owned in Lebanon. The plaintiff Norwich inserted the figure $2,000,000 with the notation "Est." on the line upon which the value of "[B]uildings used for business, commercial, mercantile, and trading purposes, but not for manufacturing" was to be set forth. This figure was inserted by the agent of the plaintiff, Donald E. Williams, who signed the statement under oath. Above Mr. Williams' signature appears the statement: "I DO HEREBY declare under penalties of false statement that the foregoing list, according to the best of my knowledge, remembrance and belief, is a true statement of all my property liable to taxation." Lebanon's board of assessors accepted the form and placed on it a figure reflecting 70 percent of the estimated value placed on the property by Norwich. The valuation was then entered into Lebanon's 1973 grand list as well as into all other grand lists in issue.

In 1973 and subsequent years, the plaintiff paid a portion of taxes claimed due by the defendant, but refused to pay most of those assessed. Although the plaintiff never appealed any of the assessments from 1973 through 1980, it brought an action in June, 1975 in two counts pursuant to § 12-119[2] claiming that the 1973 and

---

[2] General Statutes § 12-119 provides: "REMEDY WHEN PROPERTY WRONGFULLY ASSESSED. When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made *within one year from the date as of which the property was last evaluated*

1974 assessments were manifestly excessive and in violation of §§ 12-81 (4) and 12-76.[3] A demurrer to the first count was sustained in December, 1975 on the ground that the action was instituted more than one

for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the superior court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court." (Emphasis added.)

[3] General Statutes § 12-81 (4) provides: "EXEMPTIONS. The following-described property shall be exempt from taxation: . . . (4) Municipal property. Except as otherwise provided by law, property belonging to, or held in trust for, a municipal corporation of this state and used for a public purpose, including real and personal property used for cemetary purposes . . . ."

General Statutes § 12-76 provides: "ASSESSMENT OF WATER SUPPLY LAND. PAYMENTS IN LIEU OF TAXES BY CERTAIN MUNICIPAL CORPORATIONS RE WATER SUPPLY LAND IN ANOTHER MUNICIPALITY. (a) Land owned or taken by any municipal corporation, including any metropolitan district established under provisions of the general statutes or any special act, for the purpose of creating or furnishing a supply of water for its use shall be exempt from taxation when the inhabitants of the town in which such land is situated have the right to use, and use, such water supply upon the same terms as the inhabitants of such municipal corporation; otherwise such land shall be liable to taxation and shall be assessed in the town in which such land is situated to the corporation owning or controlling such water supply at what would be its fair market value were it improved farm land, notwithstanding the provisions of section 12-63 or any special act. Any such municipal corporation shall, with respect to any such land acquired on or after January 1, 1978, which is situated in a town other than that in which such municipal corporation is located, make annual payments to such town equal to the taxes which would otherwise be due if such land were assessed in accordance with section 12-63, exclusive of any taxes on improvements made on such land subsequent to acquisition by such corporation.

"(b) Notwithstanding the provisions of subsection (a) of this section, any regional water district created by special act after January 1, 1977, which is required by such act to make payments in lieu of taxes to towns in which such district is located, shall not be required to make any such payments, in any manner or amount, other than as specifically provided in accordance with such special act."

year after the assessment date for 1973. The action was subsequently dismissed in 1980 for failure to prosecute; this judgment was never opened.

In October, 1980, Lebanon's tax collector issued an alias tax warrant to collect the taxes allegedly due on the 1974 through 1979 grand lists. The amount of such taxes plus interest and lien fees equaled $956,336.65. Thereafter, the plaintiff instituted the present action seeking a temporary and permanent injunction prohibiting the defendant from collecting assessed taxes from the plaintiff for the years 1974 through 1980. The trial court concluded that it was unable to determine the value of the land, structures, and personal property from the evidence presented at trial; that the plaintiff's property was not exempt by law from taxation; that the plaintiff failed to prove that it had no adequate remedy at law; and that the issues raised were not distinctly equitable ones. Subsequent to the court action rendering judgment for the defendant on the complaint and special defense and terminating the temporary injunction, the plaintiff brought a motion to open or set aside the judgment. The court denied the motion on the grounds that "the sole purpose of [opening] the judgment would be to reconsider matters which were, or could have been, brought before the Court at trial [and] it would be an abuse of discretion to grant plaintiff's motion." From the judgment for the defendant and the denial of its motion,[4] the plaintiff appeals. We find no error in the trial court's disposition of this case for the years 1974 through 1979. For the year 1980, we remand the case to the trial court for further proceedings.

In the present case, the plaintiff's property was assessed for purposes of taxation on October 1 of each year. The claim that the property had been wrongfully

[4] We note that the denial of a motion to open a judgment is an appealable final judgment. *State* v. *Fahey,* 146 Conn. 55, 59, 147 A.2d 476 (1958).

or excessively assessed could have been appealed in one of two ways: (1) to the board of tax review and from there, within two months, to the Superior Court pursuant to §§ 12-111 and 12-118;[5] or (2) by direct action to the court within one year from the date when the property was last evaluated for purposes of taxation

[5] "[General Statutes] Sec. 12-118. APPEAL FROM BOARD OF TAX REVIEW. Any person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, claiming to be aggrieved by the action of the board of tax review in any town or city may, within two months from the time of such action, make application, in the nature of an appeal therefrom, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. Such citation shall be signed by the same authority and such appeal shall be returnable at the same time and served and returned in the same manner as is required in case of a summons in a civil action. The authority issuing the citation shall take from the applicant a bond or recognizance to such town or city, with surety, to prosecute the application to effect and to comply with and conform to the orders and decrees of the court in the premises. Any such application shall be a preferred case, to be heard, unless good cause appears to the contrary, at the first session, by the court or by a committee appointed by the court, and the pendency of such application shall not suspend an action by such town or city to collect not more than seventy-five per cent of the tax so assessed or not more than ninety per cent of such tax with respect to any real property for which the assessed value is five hundred thousand dollars or more, and upon which such appeal is taken. If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant need not appear before the board of tax review to make such amendment effective. The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable, and, if the application appears to have been made without probable cause, may tax double or triple costs, as the case appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court. If the assessment made by the board of tax review is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and costs, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and costs. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and costs. The amount to which the assessment is so reduced shall be the assessed value of such property

pursuant to § 12-119. The trial court recognized that these two statutory remedies were available to the plaintiff and would have afforded a convenient and effective opportunity to remedy the claimed illegal assessment; if successful in its claim, these statutory remedies would have provided the plaintiff with complete relief. The plaintiff sought to employ the latter procedure[6] in this case, but failed to bring the action

on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

"[General Statutes] Sec. 12-111. APPEALS TO BOARD OF TAX REVIEW. At such meeting any person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes and any person to whom title to such property has been transferred since the assessment date, claiming to be aggrieved by the doings of the assessors of such town may appeal therefrom to such board of tax review, which shall determine all such appeals and report in writing the final determination of such appeals to each such person within one week after such determination has been made. Such board may equalize and adjust the valuations and assessment lists of such town and may increase the items of taxable property in the list of any person, or the number, quantity or amount of any such item, or add to any such list any taxable property or interest therein omitted by the assessors which should be added thereto; and may add to the assessment list the name of any person omitted by the assessors and owning taxable property in such town, and make a list for him, putting therein all property liable to taxation which it has reason to believe is owned by him, at the percentage of its actual valuation, as determined by the assessors in accordance with the provisions of sections 12-64 and 12-71, from the best information that it can obtain, and add thereto ten per cent of such assessment; but, before proceeding to increase the list of any person or to add to the assessment list the name of any person so omitted, it shall mail to him, postage paid, at least one week before making such increase or addition, a written or printed notice addressed to him at the town in which he resides, to appear before such board and show cause why such increase or addition should not be made."

[6] We note that the plaintiff did attempt to bring an action under § 12-119 in 1974 for the 1974 assessment, which action was subsequently dismissed for failure to prosecute. An appeal was never taken from the dismissal. On appeal, the plaintiff recognizes the adequacy of the remedy at law provided by § 12-119, but argues that it lost this remedy due to the inaction of its attorney in prosecuting the claim. The plaintiff claims that it should not be held responsible for the loss of its remedy under § 12-119 since the loss was attributable to the negligence of its attorney. Connecti-

within the one year time limitation for the years 1974 to 1979. Thus, the trial court did not err in finding for the defendant for the years 1974 to 1979. Nor did the court abuse its discretion in refusing to open the judgment since the allegations in the motion to open, if proven, would merely have caused the court to reaffirm its prior decision. See *Barnini* v. *Liquor Control Commission,* 146 Conn. 416, 419, 151 A.2d 697 (1959). Neither should the trial court have interceded, as the plaintiff suggests, on the basis that the matter is one of great public interest and welfare. The exception to the rule denying a rehearing to a nondiligent litigant is applicable where the *state* is interested for reasons of public policy. *In re Application of Title & Guaranty Co.,* 109 Conn. 45, 55, 145 A. 151 (1929). In the present case, the matter is related strictly to the opposing contentions of two municipalities without any state involvement.

There is no error in the trial court's decision for the years 1974 through 1979.

The instant action was filed on December 1, 1980, only two months after Lebanon's October 1 assessment date. Thus, the plaintiff's 1980 tax claim is not barred by the one year limitation established by § 12-119, as are the claims for the previous years. The trial court, however, failed to consider the plaintiff's claims concerning 1980 separately, and denied relief for all the years 1974 through 1980. On appeal, the defendant maintains that the trial court did not err since the plaintiff failed to provide the court with a breakdown between land and buildings. We disagree.

cut caselaw is not in accordance with the plaintiff's position. "It is a well-established principle that courts of equity will not relieve against the operation of judgments rendered through the negligence or inattention of the party claiming to be aggrieved or his attorney . . . ." *Hayden* v. *Wallace & Sons Mfg. Co.,* 100 Conn. 180, 186, 123 A. 9 (1923), quoting *Jarvis* v. *Martin,* 77 Conn. 19, 21, 48 A. 15 (1904); see also *Palverari* v. *Finta,* 129 Conn. 38, 43, 26 A.2d 229 (1942).

In its memorandum of decision, the trial court refers to the "paucity of evidence with respect to what [the] plaintiff's assessed property consists of and how sections 12-76 and 12-81 (4) should be applicable to the land and other property . . . ." Indeed, the plaintiff did fail to provide a breakdown of the $2,000,000 figure which it estimated on its tax form. However, this fact alone should not have precluded the trial court from deciding the question of whether the land was municipal property used for a "public purpose" and, thus, exempt from taxation under § 12-81 (4). Nor should it have prevented the trial court from determining that the land in question should have been taxed pursuant to § 12-76 at "what would be its fair market value were it improved farm land." The trial court erred in failing to consider these two issues. Accordingly, we remand the case to the trial court to consider these two issues for the year 1980.

There is no error as to the trial court's decision for the years 1974 through 1979. There is error as to the 1980 tax claims. The portion of the judgment for the tax year 1980 is set aside, and the case is remanded to the trial court for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.