******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

FREDERICK CORNELIUS *v.* LINDA ARNOLD,
TAX ASSESSOR TOWN OF FARMINGTON
(AC 38011)

Keller, Mullins and Norcott, Js.

*Argued February 11—officially released October 4, 2016*

(Appeal from Superior Court, judicial district of New Britain, Hon. Arnold W. Aronson, judge trial referee.)

*Frederick Cornelius*, self-represented, the appellant (plaintiff).

*Duncan J. Forsyth*, with whom were *Kelly C. McKeon* and, on the brief, *Michael C. Collins*, for the appellee (defendant).

*Opinion*

MULLINS, J. The self-represented plaintiff, Frederick Cornelius, appeals from the summary judgment rendered in favor of the defendant, Linda Arnold, the tax assessor of the town of Farmington. On appeal, the plaintiff claims that the trial court improperly concluded that (1) his action for relief from wrongful assessment was untimely because he commenced the action beyond the one year time limitation set forth in General Statutes § 12-119,[1] and (2) he failed to establish a genuine issue of material fact as to whether a continuing course of conduct tolled that time limitation. We disagree with both claims and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history inform our review. On January 29, 2013, the plaintiff commenced this action by service of a summons and two count complaint on the defendant. In count one of the amended complaint, the plaintiff alleged the following. On October 1, 2011, he was the owner of a parcel of real property located at 1509 Farmington Avenue in Farmington (property).[2] On that date, the defendant valued the property at $238,714 and assessed the property at a value of $167,100. The assessment, on which the tax laid on the property was computed, "was manifestly excessive and could not have been arrived at except by disregarding duties of the assessor established under . . . General Statutes §§ 12-62 and/or 12-55."[3]

The defendant pleaded the time limitation set forth in § 12-119 as a special defense, alleging that the plaintiff had not commenced the action within one year of the October 1, 2011 assessment he challenged. The defendant thereafter moved for summary judgment on the basis of the special defense. The plaintiff objected, arguing that his action was timely pursuant to § 12-119 as properly read or, in the alternative, that a continuing course of conduct had tolled the limitations period.[4]

By memorandum of decision, the trial court rendered summary judgment as to count one. See footnote 2 of this opinion. The court concluded that "[t]he plaintiff's failure to bring the appeal, as alleged in count one, within the one year period starting with October 1, 2011, supports the defendant's motion for summary judgment."[5] The court further concluded that the plaintiff failed to raise a genuine issue of fact as to whether the defendant had engaged in an illegal course of conduct that would have tolled the limitations period in § 12-119. This appeal followed. Additional facts will follow as necessary.

On appeal, the plaintiff claims that the court improperly rendered summary judgment for two principal reasons. First, he claims that his commencement of the action on January 29, 2013, was timely because the

October 1, 2011 date of the allegedly illegal assessment of the property was not the "date as of which the property was last evaluated for purposes of taxation," on which the one year limitations period in § 12-119 begins. Second, he claims that whether a continuing course of conduct tolled the limitations period was a genuine issue of material fact that precluded summary judgment.

"Summary judgment may be granted where the [claim] [is] barred by the statute of limitations." (Internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co.*, *LLC*, 312 Conn. 286, 310, 94 A.3d 553 (2014). "The question of whether a claim is barred by the statute of limitations is a question of law over which we exercise plenary review." (Internal quotation marks omitted.) *Brusby* v. *Metropolitan District*, 160 Conn. App. 638, 661, 127 A.3d 257 (2015).

"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . [T]he scope of our review of the trial court's decision to grant the [defendant's] motion for summary judgment is plenary. . . .

"[I]n the context of a motion for summary judgment based on a statute of limitations special defense, a defendant typically meets its initial burden of showing the absence of a genuine issue of material fact by demonstrating that the action had commenced outside of the statutory limitation period. . . . When the plaintiff asserts that the limitations period has been tolled by an equitable exception to the statute of limitations, the burden normally shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute." (Citation omitted; internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co.*, *LLC*, supra, 312 Conn. 309–10.

I

The plaintiff first claims that summary judgment was improper because he commenced his action within the one year limitation period in § 12-119, as that statute properly is read. He argues that the "date as of which the property is last evaluated for purposes of taxation" within the meaning of § 12-119 is the date on which the assessment is "finalized" because "the evaluation process is ongoing." Because the date of finalization will vary according to the circumstances of a given case, he argues, the statute is ambiguous and must be read in his favor. He also contends that the limitations period is directory rather than mandatory or subject to

a balancing of the equities, and that an action pursuant to § 12-119 does not exclude the pursuit of other equitable remedies not subject to the time limitation. We are not persuaded.

"The legislature, in creating the municipal taxation scheme, placed precise statutes of limitations over most substantive taxpayer claims." *National CSS, Inc.* v. *Stamford*, 195 Conn. 587, 594, 489 A.2d 1034 (1985) (citing, among other statutes, § 12-119). "It is well settled that, if the owner of the [property] at the [time] of the [assessment] in question . . . want[s] to challenge the [assessment], [he is] required to follow the appropriate statutory procedures, either by (1) timely appealing from the [assessment] to the city's board of assessment appeals pursuant to General Statutes §§ 12-111 and 12-112, and from there by timely appealing to the trial court pursuant to General Statutes § 12-117a, or (2) timely bringing a direct action pursuant to . . . § 12-119. [A] taxpayer who has failed to utilize the available statutory remedies [may not] assert . . . that the tax has not been properly assessed. . . . The rationale for this rule is the need on the part of the government for fiscal certainty. A municipality, like any governmental entity, needs to know with reasonable certainty what its tax base is for each fiscal year, so that it responsibly can prepare a budget for that year. . . . Public policy requires, therefore, that taxes that have not been challenged timely cannot be the subject of perpetual litigation, at any time, to suit the convenience of the taxpayer. . . . A taxpayer who has not sought redress in an appropriate manner is foreclosed from continuing litigation outside [those] statutes." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Danbury* v. *Dana Investment Corp.*, 249 Conn. 1, 12–15, 730 A.2d 1128 (1999).

A

The plaintiff first argues that the reference in § 12-119 to the "date as of which the property was last evaluated for purposes of taxation" is ambiguous because, under the circumstances of a given case, that date may be either (1) January 31 following the October 1 assessment date, in the event that the assessor conducts an interim assessment of the property; see General Statutes § 12-55 (b); (2) May 1 following the assessment date, in the event that the assessment is appealed to the board of assessment appeals; see General Statutes § 12-111; or (3) August 1 following the assessment date, the date on which taxes become due, because "[p]ayment finalizes the [assessment] process . . . ." He argues that we must resolve this ambiguity in his favor and conclude that he timely commenced the present action. We disagree.

"[I]f there is no ambiguity in the language of [a] statute, it does not become ambiguous merely because the parties contend for different meanings." (Internal

quotation marks omitted.) *Hardt* v. *Watertown*, 95 Conn. App. 52, 57, 895 A.2d 846 (2006), aff'd, 281 Conn. 600, 917 A.2d 26 (2007). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Kasica* v. *Columbia*, 309 Conn. 85, 93, 70 A.3d 1 (2013).

Section 12-119 provides in relevant part: "When it is claimed that . . . a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . may . . . make application for relief to the [S]uperior [C]ourt for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation . . . ."

In seeking to determine the meaning of the phrase "the date as of which the property was last evaluated for purposes of taxation"; General Statutes § 12-119; as applied to the facts of this case, "we do not write on a clean slate, but are bound by our previous judicial interpretations of the language and the purpose of the statute." (Internal quotation marks omitted.) *Stratford* v. *Jacobelli*, 317 Conn. 863, 871, 120 A.3d 500 (2015). Our appellate courts uniformly have held that "the date as of which the property was last evaluated for purposes of taxation" refers to the assessment date.[6] As our Supreme Court has stated, "property [is] assessed for purposes of taxation on October 1 of each year. The claim that . . . property ha[s] been wrongfully or excessively assessed [may be] appealed . . . by direct action to the court within one year from the date when the property was last evaluated for purposes of taxation pursuant to § 12-119." (Footnote omitted.) *Norwich* v. *Lebanon*, 193 Conn. 342, 346–48, 477 A.2d 115 (1984); see also *Wilson* v. *Kelley*, 224 Conn. 110, 122 n.10, 617 A.2d 433 (1992) ("[o]ur decision today . . . requires that a declaratory judgment action that is predicated on the substantive rights of § 12-119 be brought within one year of the date of assessment").

Likewise, in *Grace N' Vessels of Christ Ministries*,

*Inc.* v. *Danbury*, 53 Conn. App. 866, 870, 733 A.2d 283 (1999), this court stated that "[the plaintiff's] application to the trial court challenged, inter alia, the October 1, 1992, and October 1, 1993 assessments [of the property]. Because [the plaintiff] filed the application[7] on August 3, 1995, more than one year from either of those dates and, therefore, beyond the time limitation permitted in § 12-119, the trial court correctly determined that its claims . . . are time barred." (Footnote added.)

Accordingly, under the foregoing authorities, the plaintiff had one year from the assessment date of October 1, 2011, to commence his action. He failed to do so. Thus, the trial court properly concluded that the plaintiff's challenge to the 2011 assessment of his property, which he commenced on January 29, 2013, fell outside the one year limitation on bringing an action pursuant to § 12-119.

The plaintiff relies on the cases of *Interlude, Inc.* v. *Skurat*, 253 Conn. 531, 754 A.2d 153 (2000), and *Wiele* v. *Board of Assessment Appeals*, 119 Conn. App. 544, 988 A.2d 889 (2010), for the proposition that the application of a one year time limit to a claim of an illegal assessment is improper. These cases, however, are factually distinguishable from the present case.

In *Interlude, Inc.*, the court concluded that § 12-119 was entirely inapplicable to the plaintiff's claim of an illegal assessment because the plaintiff did not own the subject property on the date of assessment. *Interlude, Inc.* v. *Skurat*, supra, 253 Conn. 539. Because § 12-119 did not apply, the court left for another day the question of what statute of limitations would apply *under those circumstances*. Id., 540 n.12. Here, by contrast, there is no dispute as to the plaintiff's ownership of the property on October 1, 2011, the date of the challenged assessment. In *Interlude, Inc.*, the court's conclusion that § 12-119 was entirely inapplicable defeats the plaintiff's reliance on that case to argue that our Supreme Court "has . . . expressed significant reservations regarding the proper application of any statute of limitations when a claim for an illegal assessment *is brought under § 12-119*." (Emphasis altered.) Indeed, the court in *Interlude, Inc.*, noted that "the entire range of municipal taxing statutes . . . make[s] clear that the assessment date is the foundation of municipal taxing power. Thus, it is necessary to consider the date of assessment as the appropriate date . . . *for purposes of valuation of taxable property* . . . . General Statutes § 12-119." (Citation omitted; emphasis added; internal quotation marks omitted.) *Interlude, Inc.*, v. *Skurat*, supra, 538–39.

In *Wiele*, this court declined to apply the limitations period in § 12-119 to bar a claim of an illegal assessment because the plaintiff in that case, who had moved out of state, lacked notice of the assessment until many years after the assessment had been conducted. *Wiele*

v. *Board of Assessment Appeals*, supra, 119 Conn. App. 547, 554–55. Under such circumstances, this court remanded the case to the trial court with direction to determine whether the lack of notice would support an argument that the limitations period should be equitably tolled. Id., 555. Here, there is no claim that the plaintiff lacked notice of the 2011 assessment he now challenges. Notwithstanding the plaintiff's attempt to argue that the limitations period should be tolled in this case; see part II of this opinion; there was no reason here, as there was in *Wiele*, for the court to decline to apply the limitations period.

Pursuant to our appellate courts' uniform understanding of "the date as of which the property was last evaluated" to refer to the assessment date, the time limitation set forth in § 12-119, as applied to the facts of the present case, required the plaintiff to commence the present action within one year of the October 1, 2011 assessment that he alleged was illegal. This he did not do.

The plaintiff nevertheless argues that the legislature's choice of this broadly worded phrase requires us to conclude that it intended to provide a more temporally expansive understanding of the evaluation process that may encompass January 31, May 1, or August 1 as the date of evaluation. We disagree. As to the first of these proposed dates, we acknowledge that § 12-55, which mandates the publication of the taxable grand list on or before January 31, allows the assessor to "increase or decrease the valuation of any property" prior to taking the required oath upon the grand list; General Statutes § 12-55 (b); and, as a result, "an assessor has the authority under § 12-55 to conduct an interim assessment of property . . . ." *Kasica* v. *Columbia*, supra, 309 Conn. 97. Nevertheless, we interpret the relevant statutory language as applied to the facts of the present case; id., 93 ("we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case" [internal quotation marks omitted]); and, here, there was absolutely no evidence before the trial court that any such interim assessment occurred. Indeed, the plaintiff expressly alleges in the application for relief that it was the October 1, 2011 assessment that was illegal.

As to the latter two dates, neither reasonably can be interpreted as constituting the "date as of which the property was last evaluated for purposes of taxation . . . ." General Statutes § 12-119. The plaintiff argues that "[i]f the valuation of a property can be changed under § 12-111 until May 1 of the following year due to a decision of the board of assessment appeals, then clearly, the [property] is still being 'evaluated' in April." We cannot reasonably interpret the statutory scheme, however, to contemplate that the evaluation process is still ongoing after an appeal has been taken to the board

of assessment appeals pursuant to § 12-111.[8]

The plaintiff also argues that payment of taxes by the due date of August 1 "finalizes the process" of evaluation. In support of this argument, he relies on a Supreme Court case discussing a prior version of § 12-119, which could be "invoked up to the expiration of one year, not from the making of the assessment but from the time when the tax became due . . . ." *Cohn* v. *Hartford*, 130 Conn. 699, 702–703, 37 A.2d 237 (1944). As we have noted, however, the numerous appellate decisions to have considered the present version of the statute uniformly have interpreted its time limitation to commence on the date of assessment. See *Wilson* v. *Kelley*, supra, 224 Conn. 122 n.10; *Norwich* v. *Lebanon*, supra, 193 Conn. 346–48; *Grace N' Vessels of Christ Ministries, Inc.* v. *Danbury*, supra, 53 Conn. App. 870; see also *Crystal Lake Clean Water Preservation Assn.* v. *Ellington*, 53 Conn. App. 142, 151, 728 A.2d 1145, cert. denied, 250 Conn. 920, 738 A.2d 654 (1999); *Farmington* v. *Dowling*, 26 Conn. App. 545, 552, 602 A.2d 1047 (1992), appeal dismissed, 224 Conn. 592, 619 A.2d 852 (1993) (certification improvidently granted). For the foregoing reasons, the plaintiff's alternative interpretations of the relevant language are either factually inapplicable or legally incorrect.

Because the plain meaning of "the date as of which the property was last evaluated for purposes of taxation" provided the plaintiff with one year from the October 1, 2011 assessment in which to commence the present action pursuant to § 12-119, there is no ambiguity to resolve in the plaintiff's favor. "Where the language of the statute is unambiguous, we are confined to the intention expressed in the actual words used and we will not search out any further intention of the legislature not expressed in the statute. . . . In the absence of ambiguity it is unnecessary to resort to principles of statutory construction such as the resolution of ambiguity in favor of the taxpayer." (Citation omitted.) *Harris Data Communications, Inc.* v. *Heffernan*, 183 Conn. 194, 198, 438 A.2d 1178 (1981); see *Stratford* v. *Jacobelli*, supra, 317 Conn. 874–75 (declining to apply canon of statutory construction resolving ambiguity in favor of taxpayer where taxpayer failed to advance other reasonable interpretation of statute in question).

B

In the alternative, the plaintiff contends that the one year limitation on bringing an action pursuant to § 12-119 is "clearly directory," subject to a balancing of the equities that must be resolved in his favor, or that the relief provided by § 12-119 is "cumulative and not exclusive of equitable remedies" not subject to the statute's one year time limitation. We are not persuaded.

First, the plaintiff argues that the time limitation in § 12-119 is directory, not mandatory, because it pro-

vides that an application for relief "may" be brought within a year of the date as of which the property was last evaluated for taxation purposes. We decline to consider this argument because it is inadequately briefed. The plaintiff notes that the statute employs the word may, which " 'ordinarily does not connote a command,' " as our Supreme Court noted in *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 20, 848 A.2d 418 (2004); nevertheless, he fails to examine the context in which the word may is employed, proceeding instead to a conclusory assertion that § 12-119 must, therefore, be permissive. "Although we are solicitous of the rights of self-represented litigants . . . this court is not required to review claims that are inadequately briefed." (Citation omitted; internal quotation marks omitted.) *Midland Funding, LLC* v. *Mitchell-James*, 163 Conn. App. 648, 649 n.1, 137 A.3d 1 (2016). In any event, we note that the commencement of an application for relief from an illegal assessment beyond the one year limitations period in § 12-119, as long as it is specially pleaded, as the defendant has done here, provides a basis for a court to deny the relief provided for in the statute. See *L. G. DeFelice & Son, Inc.* v. *Wethersfield*, 167 Conn. 509, 510–11, 513, 356 A.2d 144 (1975).

Second, the plaintiff argues that the one year limitation is subject to a balancing of equities that tips in his favor. We disagree. It is not a court's role to balance the equities to determine whether to apply a statute of limitations in a given case, for, in determining whether to impose a time limitation on a particular type of action, our legislature *already* has balanced the relevant equities and determined the point in time at which they weigh in favor of finality. "The purposes of statutes of limitation[s] include finality, repose and avoidance of stale claims and stale evidence. . . . These statutes represent a legislative judgment about the balance of equities in a situation involving a tardy assertion of otherwise valid rights: [t]he theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." (Internal quotation marks omitted.) *Iacurci* v. *Sax*, 313 Conn. 786, 806–807, 99 A.3d 1145 (2014); see also *Danbury* v. *Dana Investment Corp.*, supra, 249 Conn. 15 (time limitations on taxpayer challenges recognize municipal interest in fiscal certainty).

Third, the plaintiff argues that the remedy provided by § 12-119 is "cumulative and not exclusive of equitable remedies, and a party may elect to proceed under either or both." On the contrary, "as [§ 12-119] was clearly intended to take the place of the remedy in equity based on an overvaluation of the property and as all the relief can be obtained under it which could be afforded by equity, it precludes a resort to equity generally in such

a case as the one before us." (Internal quotation marks omitted.) *Norwich* v. *Lebanon*, 200 Conn. 697, 706, 513 A.2d 77 (1986); see also *Crystal Lake Clean Water Preservation Assn.* v. *Ellington*, supra, 53 Conn. App. 150 ("a taxpayer may not [additionally seek a common law remedy] in an attempt to circumvent the time restraints of § 12-119 if it would undermine the purpose of the statute").

## II

The plaintiff also claims that the court improperly concluded that he failed to raise a genuine issue of fact as to whether the defendant's continuing course of conduct tolled the one year limitations period in § 12-119. He argues that he created a genuine issue of material fact by submitting evidence that, although the parties "engaged in a continuing course of conduct to establish a proper valuation for the property," the defendant did not provide a response to his request to revise the 2011 assessment that "at any time may have remedied the conflict and removed the need for a lawsuit . . . ." We disagree.

As previously noted, a plaintiff may avoid summary judgment on statute of limitations grounds by creating an issue of fact as to whether an equitable exception to the statute applies. *Flannery* v. *Singer Asset Finance Co.*, *LLC*, supra, 312 Conn. 310 ("burden normally shifts to the plaintiff to establish a disputed issue of material fact" regarding equitable exception to statute of limitations); *Wiele* v. *Board of Assessment Appeals*, supra, 119 Conn. App. 551 ("the limitation in § 12-119 is procedural and personal rather than jurisdictional and, therefore, susceptible to equitable doctrines"). "In certain circumstances . . . we have recognized the applicability of the continuing course of conduct doctrine to toll a statute of limitations. . . . [W]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed."[9] (Citation omitted; internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co.*, *LLC*, supra, 312 Conn. 311.

"[I]n order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong." (Internal quotation marks omitted.) *Brusby* v. *Metropolitan District*, supra, 160 Conn. App. 662. "The continuing course of conduct doctrine has no application after the plaintiff has discovered the harm . . . ." Id.

In the present case, the plaintiff did not and, indeed, could not establish a genuine issue of material fact as to the applicability of this doctrine because the very

course of conduct on which he sought to rely demonstrates that he already had discovered the harm upon which he sued—namely, the allegedly illegal 2011 assessment of the property. Before the trial court, the plaintiff argued that "[o]n October 26, 2011, [he] initiated an informal effort to have the assessment reduced," which "continued periodically [until] December 5, 2012 . . . when the effort became more formalized. The plaintiff's request to revise the assessment to reflect the nonexistence of the structure created a duty on the part of the defendant to . . . at least respond to the plaintiff's legitimate concern. The defendant never responded to the plaintiff's request." (Emphasis omitted.) Consequently, he argued, "[t]he equitable doctrine of continuing course of conduct tolled the inception of any applicable statute of limitations until at least January 13, 2013 . . . which was the last occurring conduct outside of this action." The evidence by which the plaintiff attempted to demonstrate a continuing course of conduct indicated that in October, 2011, he had sought to reduce the assessment by notifying the defendant of the removal of a house from the property several months prior, and that the parties had met on January 10, 2013, to discuss the assessment of the property.[10]

The evidence presented to the trial court in opposition to the defendant's motion for summary judgment demonstrates, in sum, that after initially challenging the 2011 assessment on October 26 of that year, the plaintiff waited more than one year before attempting again to challenge the assessment, in December, 2012. See footnote 10 of this opinion. This evidence, which unequivocally indicates the plaintiff's awareness of and disagreement with the 2011 assessment, utterly fails to implicate the continuing course of conduct doctrine.

Here, the plaintiff clearly had discovered the harm upon which he sued; he simply waited too long to do so. As we previously have noted in this opinion, there were two avenues by which the plaintiff could have challenged the validity of the 2011 assessment of the property: he could have filed a timely appeal to the board of assessment appeals, and, from there, a timely appeal to the Superior Court; see General Statutes §§ 12-111 and 12-117a; or he could have filed a timely appeal pursuant to § 12-119 directly to the Superior Court. See *Danbury* v. *Dana Investment Corp.*, supra, 249 Conn. 12–15. He elected to engage in periodic "informal" efforts to have the assessment reduced instead of commencing the present action under § 12-119. He offers no authority for the assertion that these efforts created a duty on the part of the defendant to engage in negotiations regarding the assessment, and, indeed, the defendant was under no such duty. The plaintiff's attempts to negotiate a lower assessment were not a substitute for timely resorting to the existing procedure for challenging the assessment's legality. "[A] taxpayer who has failed to utilize the available statutory remedies [may

not] assert . . . that the tax has not been properly assessed." (Internal quotation marks omitted.) *Danbury* v. *Dana Investment Corp.*, supra, 14–15.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 12-119 provides in relevant part: "When it is claimed . . . that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the [S]uperior [C]ourt for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the Superior Court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

Thus, "[i]n a tax appeal taken pursuant to § 12-119, the plaintiff must prove that the assessment was (a) manifestly excessive *and* (b) . . . could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of the property. . . . [The plaintiff] must [set forth] allegations beyond the mere claim that the assessor overvalued the property. . . . The focus of § 12-119 is whether the assessment is illegal." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *Redding Life Care*, *LLC* v. *Redding*, 308 Conn. 87, 105, 61 A.3d 461 (2013).

[2] In count two, the plaintiff appealed, pursuant to General Statutes § 12-117a, from the action of the Farmington Board of Assessment Appeals reducing the October 1, 2012 assessment of the property to $70,630. Because count two remained pending in the trial court, the plaintiff's initial appeal to this court was dismissed for lack of a final judgment. Before filing the present appeal, the plaintiff withdrew count two, rendering the trial court's judgment final. See *Annecharico* v. *Patterson*, 38 Conn. App. 338, 339–40, 660 A.2d 880 (1995). Accordingly, only count one is at issue in the present appeal.

[3] General Statutes § 12-62 (b) provides in relevant part: "(1) Commencing October 1, 2006, each town shall implement a revaluation not later than the first day of October that follows, by five years, the October first assessment date on which the town's previous revaluation became effective . . . . The town shall use assessments derived from each such revaluation for the purpose of levying property taxes for the assessment year in which such revaluation is effective and for each assessment year that follows until the ensuing revaluation becomes effective.

"(2) When conducting a revaluation, an assessor shall use generally accepted mass appraisal methods . . . . Prior to the completion of each revaluation, the assessor shall conduct a field review. Except in a town that has a single assessor, the members of the board of assessors shall approve, by majority vote, all valuations established for a revaluation. . . ."

General Statutes § 12-55 provides in relevant part: "(a) On or before the thirty-first day of January of each year, except as otherwise specifically provided by law, the assessors or board of assessors shall publish the grand list for their respective towns. Each such grand list shall contain the assessed values of all property in the town . . . for the assessment year commencing on the October first immediately preceding. The assessor or board of assessors shall lodge the grand list for public inspection, in the office of the assessor on or before said thirty-first day of January, or on or before the day otherwise specifically provided by law for the completion of such grand list. . . .

"(b) . . . The assessor or board of assessors may increase or decrease the valuation of any property as reflected in the last-preceding grand list, or the valuation as stated in any personal property declaration or report received pursuant to this chapter. . . ."

[4] The plaintiff appended three exhibits to his objection: (1) a residential

property card for the property bearing a handwritten note that "10/26/11 owner came in [and] said house was torn down a few months ago. No permits were taken out as of 1/31/12. Building Dept. will not write a letter"; (2) a December 5, 2012 letter from the plaintiff to the defendant requesting "all information regarding the 2007 property revaluation"; and (3) a January 16, 2013 letter from the plaintiff to the defendant purporting to memorialize a January 10, 2013 meeting between the parties.

[5] The court incorrectly identified February 4, 2013, the date on which the plaintiff filed the complaint in the Superior Court, as the date of the action's commencement. An application for relief from wrongful assessment is not commenced until it is "served and returned in the same manner as is required in the case of a summons in a civil action . . . ." General Statutes § 12-119; see General Statutes § 52-45a (civil action commenced by legal process); cf. *Chestnut Point Realty, LLC* v. *East Windsor*, 158 Conn. App. 565, 573–74, 119 A.3d 1229 (construing identical language in General Statutes § 12-117a, which provides that tax appeal "shall be . . . served and returned in the same manner as is required in case of a summons in a civil action," to require service of process for commencement of tax appeal), cert. granted, 319 Conn. 928, 125 A.3d 203 (2015). Because we conclude that the limitations period in § 12-119 expired before January 29, 2013, the date on which process was served, any error was not material to the court's determination that the plaintiff's action was untimely.

[6] General Statutes § 12-62a provides in relevant part: "(a) Each municipality . . . shall establish a uniform assessment date of October first.

"(b) Each such municipality shall assess all property for purposes of the local property tax at a uniform rate of seventy per cent of present true and actual value, as determined under section 12-63. . . ."

[7] See footnote 5 of this opinion.

[8] Indeed, to appeal to the board of assessment appeals pursuant to § 12-111, a person already must be aggrieved by an act of the assessor, including, for example, the valuation of his property for taxation purposes. Section 12-111 (a) provides in relevant part: "Any person . . . claiming to be aggrieved by the doings of the assessors of such town may appeal therefrom to the board of assessment appeals. . . . Such board may equalize and adjust the grand list of such town and may increase or decrease the assessment of any taxable property or interest therein . . . ."

[9] Our appellate courts previously have not considered whether the continuing course of conduct doctrine may toll the limitations period in § 12-119. The plaintiff relies on *Wiele* to argue that the doctrine may provide an exception to the limitations period in § 12-119. In *Wiele*, this court suggested, but did not decide, that the doctrine of equitable tolling applies to toll the limitations period in § 12-119 where the property owner did not have notice of the challenged assessment. See *Wiele* v. *Board of Assessment Appeals*, supra, 119 Conn. App. 553, 555. In the present case, because we conclude that the plaintiff failed to raise a genuine issue of material fact, we need not address the continuing course of conduct doctrine's applicability to the limitations period in § 12-119.

[10] The January 16, 2013 letter from the plaintiff to the defendant purporting to memorialize the meeting reads in relevant part that "the following are the salient points as I understood them:

"1. Although you profess a personal willingness to address the issues of the assessment for this property, you indicated that you are unable to address them because no relief is available because the issues are not a result of any 'mistake' but rather are the result of 'judgment.' . . .

"4. You indicated that the information you provided to me in your e-mail on December 6, 2012, in response to my request for information of December 5, 2012, contains all the information and correspondence available and 'there is nothing else than what has already been provided.'

"If this is not an accurate representation of our conversation, or if there is any relevant information that I have not included, please advise any necessary corrections or additions at your earliest opportunity.

"Sincerely,

"[The plaintiff]."